**William R. MACERA, acting in his capacity as the Mayor of Johnston**

v.

**Mary CERRA et al.**

**No. 2000–80–APPEAL.**

Supreme Court of Rhode Island.

Feb. 8, 2002.

 

## OPINION

GOLDBERG, Justice.

This case came before the Supreme Court on December 4, 2001, on appeal by the plaintiff, William R. Macera (Macera or mayor), in his capacity as the Mayor in the Town of Johnston, from a final judgment of the Superior Court denying his claims for relief and granting a counterclaim for mandamus in favor of the defendant, Fred L. Iafrate (Iafrate), an employee of the town. We affirm in part and reverse in part.

### Facts and Travel

Iafrate was hired in March 1995 by the previous Mayor, Louis Perrotta and, although he assumed the responsibility of supervising and directing the everyday activities of twenty to twenty-five employees within the Department of Public Works (DPW), a dispute about Iafrate's job title and employment status arose shortly after Macera was elected to the position of mayor. On December 16, 1998, Iafrate received a letter from Macera, requesting his resignation as Johnston's Director of Public Works. Iafrate refused to resign on the ground that he held the position of highway director, not DPW director and, further, Iafrate maintained that the position of highway director was a union position, and he thus enjoyed protected status as a union employee. By letter, Iafrate referred Macera to section 10.12 of the Collective Bargaining Agreement (CBA), between the Perrotta administration and the Johnston Town Employees Local 1491 Municipal Union, that included a provision that the position of highway director was a union position and would remain so for the remainder of Iafrate's tenure, at which point the position would be eliminated from the collective bargaining unit. Macera responded with another letter informing Iafrate that his employment with the

John M. Verdecchia, Providence, for plaintiff.

Gerard P. Cobleigh, Warwick, Gregory Piccirilli, Cranston, Frank J. Manni, Johnston, John A. Leidecker, Jr., Cranston, for defendant.

Present: WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

Town of Johnston was terminated as of January 11, 1999.

Iafrate responded with a two-pronged attack, beginning with a union grievance claiming that Macera violated the terms of the CBA by purporting to terminate him without cause. Iafrate also filed an appeal of his dismissal with the Johnston Town Council (council), in its capacity as the Board of Personnel Review. The council determined that Iafrate was the town's highway director and not the Director of Public Works and, as such, Iafrate did not serve at the pleasure of the mayor and was further protected by the CBA. The council also ordered that Iafrate be reinstated as highway director with full restoration of all benefits, seniority rights and back pay.

Macera turned to the Superior Court and filed a complaint seeking declaratory and injunctive relief against the council and Iafrate.[1] A temporary restraining order prohibiting Iafrate's reinstatement was entered and, following an evidentiary hearing that was consolidated with a hearing on the merits, the hearing justice agreed with Iafrate's position that he was employed as highway director and not as the director of the DPW. The court held that the highway director does not serve at the pleasure of the mayor and that Macera was not vested with charter authority to terminate Iafrate in the absence of good cause. Finding that Iafrate was protected from dismissal regardless of the CBA provisions, the hearing justice declined to rule on Macera's challenge to the validity of the CBA that purported to grant union membership to Iafrate. Accordingly, the hearing justice denied Macera all relief and granted Iafrate's request for a writ of mandamus directing that he be reinstated

to the position of highway director with reimbursement for all salary and benefits.

Iafrate's victory was short lived; his attempts to return to work as highway director were rebuffed and he was informed that the position had been eliminated and that he would not be reinstated. Iafrate responded by filing a motion in Superior Court seeking to adjudge Macera in contempt for his refusal to reinstate Iafrate to his previously held position. A hearing justice found Macera to be in contempt of the order of reinstatement but allowed him to purge the contempt by immediately reinstating Iafrate. This Court denied Macera's petition for writ of certiorari and request for a stay of judgment. Macera then sought relief from the judgment, pursuant to Rule 60(b)(4), (5) and (6) of the Superior Court Rules of Civil Procedure. Again, Macera argued for a modification of the earlier order of reinstatement that required him to restore a supervisory employee to his former status as a member of the collective bargaining unit. The trial justice again declined to address the union issue and the Rule 60 motion was denied. Macera thereupon purged himself of the contempt, complied with the order of reinstatement and appealed the judgment to this Court.

### Removal For Cause

■ On appeal Macera argued that the trial justice erred in interpreting the Johnston Town Charter in such a way that Iafrate, as highway director, could only be removed for cause because he was the *de facto* Director of Public Works and exercised authority beyond the town's "highway department." "This Court will not disturb the findings of a trial justice sitting without a jury unless such findings are

1. By agreement of the parties, and order of the Court on March 8, 1999, Rhode Island Council 94, Local 1491, American Federation of State, County and Municipal Employees was permitted to intervene as a party defendant.

clearly erroneous or unless the trial justice misconceived or overlooked material evidence or unless the decision fails to do substantial justice between the parties." *Harris v. Town of Lincoln,* 668 A.2d 321, 326 (R.I.1995) (citing *Gross v. Glazier,* 495 A.2d 672, 673 (R.I.1985), and *Lisi v. Marra,* 424 A.2d 1052, 1055 (R.I.1981)). "It is well settled that our standard of review of the findings of fact by a trial justice in a non-jury case is deferential. We shall not disturb such findings unless they are clearly wrong or unless the trial justice has overlooked or misconceived relevant and material evidence." *Barone v. Cotronco,* 711 A.2d 648, 649 (R.I.1998) (mem.).

The Home Rule Charter (charter) for the Town of Johnston designates the mayor as the chief executive and administrative officer of the town.[2] The charter also creates several departments of town government including the Department of Public Works and vests the mayor with the authority to appoint a director of each department who serves at the pleasure of the mayor.[3] In order to properly administer these departments, offices and agencies, the charter also vests the mayor with the authority to appoint other officers and employees of the town.[4] These appointed officers and employees are divided into two categories: (1) those who serve at the pleasure of the mayor, who can be terminated without cause;[5] and (2) those employees not subject to an express charter provision, who can only be removed for cause.[6] Therefore, although the mayor's power of appointment is absolute, he does not enjoy an absolute right of termination. As the trial justice noted, this system serves the purpose of permitting the mayor to appoint certain identified department heads, and to terminate them at will, while protecting other positions from the inevitable political turmoil that results from an election in the Town of Johnston. The charter is designed to ensure stability and continuity in government and to provide for an orderly transition from one mayoral administration to the next. Notably, the charter also permits the mayor to serve as the director of the DPW and thus leave this post unfilled.[7] That provision has led to this dispute. The trial justice properly concluded that, pursuant to the charter, the director of the DPW serves at the pleasure of the mayor and that all other mayoral appointees within that department fall within the provisions of Article IV, Sec. 4–6(1)[8] of the charter are classified employees pursuant to Article XVI, Sec. 16–4, and may only be discharged for cause. Accordingly, Iafrate's status as an employee of the town of Johnston hinged on whether he was serving as Director of Public Works or as he alleged, in the

2. Johnston Town Charter Art. IV, Sec 4–6.

3. Charter Art. IX, Sec. 9–1; Art. X, Sec. 10–1; Art. XIII, Sec. 13–1; Art. XIV, Sec. 14–1.

4. Charter Art. IV, Sec. 4–6(1).

5. Charter Art. IX, Sec. 9–1; Art. X, Sec. 10–1; Art. XIII, Sec. 13–1; Art. XIV, Sec. 14–1.

6. Charter Art. IV, Sec. 4–6(1).

7. Charter Art. X, Sec. 10–1.

8. Article IV, Section 4–6 of the charter provides:

*"Powers and duties.* The mayor shall be the chief executive and administrative officer of the town and shall be responsible for the administration of all departments, offices and agencies except as otherwise provided by this Charter. To accomplish this purpose he shall:

(1) Appoint and remove for cause any officer or employee of the town except as otherwise provided by this Charter, and except that he may authorize the head of a department or office to appoint and remove subordinates in such departments or offices * * *."

subordinate position of head of the highway department.

■ We note at the outset that neither the charter nor the Johnston Town Code of Ordinances (code) provide for the position of highway director, although this position is recognized in the CBA. Pursuant to § 2–49A of the code, the DPW is divided into six separate agencies, including the agency of public roads and bridges. The director of the DPW is vested with the authority to appoint, with the approval of the mayor, an individual to serve as the head of each of the agencies that comprise the DPW.[9] This individual does not serve at the pleasure of the mayor and may only be removed for cause, with the concurrence of the council.[10] Therefore, the power to appoint ultimately rests with the mayor; however, and more significantly, the authority to remove this individual is limited and must be based on cause. Although it is apparent that neither the charter nor the code have been followed to the letter, it is plausible to conclude that the position Iafrate maintained he held, as recognized by the mayor and memorialized in the CBA, is the head of public roads and bridges, an agency of the DPW. We observe, however, that the town's employment structure is less than well-organized and may not be in compliance with the town's merit system and further, the diffuse nature of this system lends support to Macera's argument that Iafrate was acting as the *de facto* head of the DPW. However, we are satisfied that the findings of the trial justice and our decision today comport with a close reading of the charter and the code.

The trial justice's factual determination that Iafrate held the position of highway director, and not Director of Public Works, is soundly supported by the evidence in this case. First, and most importantly, in his complaint to the Superior Court, Macera averred that Iafrate was the highway director for the town. Further, during the evidentiary hearing, Macera testified that in the correspondence requesting his resignation, it was an error to refer to Iafrate as the Director of Public Works and that "there [was] no doubt in [his] mind that Mr. Iafrate was in fact the highway director and not the Public Works Director." There is no indication that the trial justice erred or overlooked or misconceived material evidence in reaching the conclusion that Iafrate was employed as highway director, subject to dismissal only for cause as approved by the town.

Based upon our independent review of the charter and ordinances of the Town of Johnston, we conclude that the decision of the trial justice, declaring that Iafrate held the position of highway director, should be affirmed and that, as highway director, Iafrate was subject to discharge only for cause and with the concurrence of the town council.

## Union Issue

■ We next turn our attention to the issue of Iafrate's status as a member of the collective bargaining unit. Macera has alleged that the hearing justice erred when she refused to rule on his claim that Iafrate held a supervisory position within the town and was thus not entitled to union membership. We agree and are mindful that no factual record exists respecting this issue. Having found error in the refusal of the trial justice to rule on an essential claim for relief, this Court would normally remand the matter for additional fact-finding. However, in light of the extensive record in this case, particularly the

---

9.  Johnston Town Code, Sec. 2–49A.

10.  Charter Art. IV, Sec. 4–6(1).

evidence introduced by Iafrate in support of his counterclaim for mandamus, we are satisfied that additional fact-finding is unnecessary and would serve no useful purpose. *See R–N–R Associates v. Zoning Board of Review of Providence,* 100 R.I. 7, 13, 210 A.2d 653, 656 (1965) (after careful scrutiny of the record, remand was unnecessary in circumstances where additional fact-finding would serve no useful purpose). Significantly, Iafrate introduced a series of exhibits clearly establishing not only his role as highway director but also demonstrating that his responsibilities were supervisory and managerial. The record discloses that Iafrate exercised the powers associated with his managerial status on numerous occasions that ultimately led to the absurd situation in which a laborer and fellow union member filed a grievance against his supervisor, brother Iafrate, arising from the imposition of progressive discipline by Iafrate, including written disciplinary warnings, a suspension, termination and reinstatement that was ultimately negotiated by the union. Iafrate's membership in this same collective bargaining unit is violative of the public policy of this state that the inclusion of managers and supervisors in the collective bargaining process creates a conflict of interest because, as this Court has recognized, these individuals are (or should be) "aligned with the [public body] as the employer in disputes and grievances of the 'rank and file employee.'" *State v. Local No. 2883, AFSCME,* 463 A.2d 186, 191 (R.I.1983). Moreover, managerial and supervisory employees are specifically excluded in the definition of municipal employees found in G.L.1956 chapter 9.4 of title 28, the Municipal Arbitration Act. Section 28–9.4–2(b) of that act defines a municipal employee as "any employee of a municipal employer, whether or not in the classified service of the municipal employer, except: * * *(4) Confidential and *supervisory* employees * * *." (Emphasis added.)

This Court has consistently held that managerial and supervisory employees are excluded from the collective bargaining process, *AFSCME,* 463 A.2d at 191, as are employees with access to confidential information. *Barrington School Committee v. Rhode Island State Labor Relations Board,* 608 A.2d 1126, 1136 (R.I.1992). Further, we have adopted the federal definition of supervisor as "any individual having authority, in the interest of the employer, to hire * * * suspend * * * discharge * * * or discipline other employees, or responsibility to direct them, * * * if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment." *AFSCME,* 463 A.2d at 189–90, n. 4 (quoting 29 U.S.C.A. § 152(11)). Accordingly, based on the record before us, we are persuaded that the town's highway director is not a rank and file employee eligible for inclusion in the collective bargaining unit. By virtue of the record introduced by Iafrate, the local ordinances relied upon in support of his counterclaim [11] and the managerial and supervisory duties inherent in this position, the highway director does not qualify for union membership. Although both state law and the charter accord municipal employees the right to organize and join lawful organizations for the purpose of collective bargaining, neither department heads nor heads of agencies are eligible employees. We agree with Macera's assertion that, as highway director, Iafrate is responsible for the direction and supervision of numerous employees and has exercised these responsibilities on numerous occasions, in-

---

**11.** Article XVI, Sections 16–4 and 16–13 of the charter and G.L.1956 § 28–9.4–2.

cluding the termination of insubordinate workers. By his own admission, Iafrate supervised twenty to twenty-five employees, made job assignments, suspended and fired employees and answered to no one but the mayor. Also, he possessed all the powers delineated in Article XVI, Section 16–11 of the charter.[12] Iafrate may not have it both ways; his argument that he served as the director of highways also served to disqualify him from inclusion in the bargaining unit. Therefore, the provision of the CBA which places the position of highway director in the union shall be stricken from the contract.

### Conclusion

For the aforementioned reasons, the plaintiff's appeal is sustained in part and denied in part. The judgment granting the counterclaim for a writ of mandamus for reinstatement of the defendant, Fred L. Iafrate, to the position of highway director of the town of Johnston is affirmed. The claim of the plaintiff relative to Iafrate's membership in the collective bargaining unit is sustained. This case is remanded to the Superior Court with directions to enter judgment in accordance with this decision.

---

12. **Article XVI, Section 16–11 of the charter provides in pertinent part:**

"**Appointment and discharge of subordinates.** Unless otherwise provided in this Charter, each elected officer, department head, board or other agency may appoint, dismiss, suspend, demote, transfer or lay off his or their deputies, clerks, assistants and subordinates serving under his or their supervision or control * * *."