## Patricia B. MILLETTE

v.

## BURGESS OAKES, LLC, and Gallimaufrey Good Food, Inc.

### No. 2001–232–Appeal.

Supreme Court of Rhode Island.

Feb. 14, 2003.

Alden Harrington, Providence.

Eric Sommers, Providence; Stacy B. Ferrara, Coventry.

James Moretti, Cranston; Janet J. Goldman, Wakefield; Brooks R. Magratten, Providence.

### ORDER

This case came before the Supreme Court on December 10, 2002, pursuant to

an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After hearing the arguments of counsel and reviewing the memoranda of the parties, we are satisfied that cause has not been shown. Accordingly, we shall decide the appeal at this time.

This is a dispute among three creditors regarding the priority of their security interests in personalty consisting of restaurant equipment and inventory owned by the defendant, Gallimaufrey Good Food, Inc. (Gallimaufrey).[1] Paul and Patricia Millette (the Millette's) were the principals of Burgess Oakes, LLC (Burgess Oakes), a Rhode Island limited liability company that owned commercial real estate in Providence. The Millette's also owned and operated Gallimaufrey, a catering business, on the premises. Patricia Millette petitioned for the appointment of a receiver to liquidate the assets; a permanent receiver was appointed on May 5, 2000 and the assets of Gallimaufrey were subsequently sold. It is the proceeds of this sale that has generated this dispute.

In 1997, Burgess Oakes financed the purchase of its real estate with a $505,000 loan from the First Bank & Trust Company in return for a first security interest in the realty. On February 11, 1997, Gallimaufrey obtained a loan of $125,660 (loan) from the Providence Economic Development Corporation (PEDC). The Millette's granted PEDC secondary security interests in the Millette's and Burgess Oakes' real property and a first security interest in the personalty and fixtures of Gallimaufrey.[2]

In May 1998, Burgess Oakes and Gallimaufrey (borrowers) sought to refinance existing debt to First Bank & Trust. The United States Small Business Administration (SBA), acting through Domestic Bank (Domestic), agreed to lend borrowers $575,000, and required, among other conditions precedent, that Domestic obtain a first security interest in borrowers' personalty and fixtures. Initially, borrowers' counsel wrote to PEDC seeking a subordination of PEDC's first position interest in borrowers' assets and enclosed an SBA document detailing the conditions of the SBA loan. Counsel for borrowers subsequently forwarded two subordination agreements to PEDC; however, these draft agreements related to the real properties owned by Burgess Oakes and the Millettes and not the personalty that is the subject of this dispute.

On June 25, 1998, borrowers attended a closing of the SBA loan at Domestic. Funding of the loan was conditioned on the subordination of the PEDC security interest to the SBA loan. Domestic did not record the loan documents or tender the proceeds until confirmation of the subordination agreement, and on July 2, 1998, PEDC communicated to Gallimaufrey its approval of the subordination agreement.[3]

---

1. The third creditor, Chez Sous, Inc., claimed a "purchase money" security interest in certain of the assets of Gallimaufrey, but failed to demonstrate to the satisfaction of the trial justice that it had properly perfected its security interest. Chez Sous, Inc. did not appeal from that decision and is not before the Court.

2. The loan was documented by a promissory note and a loan agreement by borrowers and was secured by a junior mortgage recorded against real property owned by the Millettes and Burgess Oakes as well as a security agreement and related financing statement in favor of PEDC. All documents were dated February 11, 1997.

3. The letter stated in part: "After review and discussion, the Board unanimously voted to approve your request for subordination in the

The PEDC successfully argued to the trial justice and asserts on appeal that the board of directors considered the request to subordinate its mortgages recorded against borrower's real estate but neither considered nor approved a request for subordination as to borrower's personalty. Indeed, the minutes of the meeting of the board reflect a vote to consider a request to subordinate PEDC's collateral position on the real estate only.

The borrower ultimately defaulted on their loan obligations. On March 7, 2000, Domestic notified PEDC that a lien search had failed to document the subordination of PEDC's security interests in borrowers' personalty and fixtures. PEDC refused to accede to Domestic's request to execute the appropriate documents reflecting this alleged subordination. The PEDC claimed that it never agreed to subordinate its interest in borrowers' personalty and fixtures. Additionally, PEDC submitted that, as holder of a properly perfected security interest in the personalty, it was entitled to payment from the receiver. Domestic, on the other hand, asserted that it had a superior position in the personalty, and alleged that PEDC had agreed to subordinate its priority position to Domestic notwithstanding that it failed to produce a signed subordination agreement and a specific request for a subordination of the personalty. Domestic asserted by way of affidavit that it "would not have funded the [l]oan without the assurance from PEDC that it would subordinate its collateral position on the personal assets of [borrowers] as requested and agreed and pursuant to the terms of the SBA Commitment."

The record discloses that Domestic could not produce evidence of a subordination of the PEDC lien to that of Domestic. Although the trial justice agreed with Domestic that an instrument evidencing a subordination of liens need not be recorded because it is merely an agreement between the parties to the subordination, that argument was not dispositive of the issues before the court because Domestic failed to prove to the satisfaction of the trial justice that a subordination agreement existed.

In his bench decision, the trial justice noted the absence of any documentation evidencing an agreement by PEDC to subordinate its security interest in the personalty to Domestic. He also observed that there was no communication between Domestic and PEDC and that the only communication to PEDC came from Gallimaufrey's lawyer and not counsel for Domestic. The trial justice held that the Domestic loan closed before the PEDC's board met and voted on the issue of subordination and certainly before Domestic was advised of any agreement to subordinate PEDC's priority position. Therefore, the trial justice found that Domestic could not have reasonably relied upon a vote that had not yet taken place and ruled that PEDC held a first security interest in borrowers' personalty and fixtures. Following this decision, Domestic filed a motion for reconsideration that was ultimately denied by the trial justice.

Before this Court, Domestic argues that the trial justice overlooked evidence that PEDC agreed to subordinate its interest to Domestic and that it subsequently breached that agreement. It is well established that we accord the findings of fact by a trial justice in a nonjury case deferential review. *Macera v. Cerra,* 789 A.2d 890, 893 (R.I.2002). These findings of fact

amount of $575,000.00 to Domestic Bank/ SBA."

are entitled to great weight and will not be disturbed on appeal absent a demonstration by record evidence that the trial justice overlooked or misconceived material evidence or was otherwise clearly wrong. *Donnelly v. Cowsill,* 716 A.2d 742, 747 (R.I.1998).

We note, as did the trial justice, that a record of PEDC's priority interest in the inventory and equipment of borrowers was filed with the Secretary of State. Domestic, unable to produce any filing reflecting a change in PEDC's position, relies upon the initial request of borrowers' attorney that included a copy of the details of the SBA loan. Domestic submits that this documentation is sufficient to establish its position and is further proof that its loan was contingent upon the subordination of PEDC's position in the collateral. We are not persuaded that this evidence conclusively establishes that PEDC agreed to subordinate its position in the personalty. Significantly, PEDC was never provided with a subordination agreement for the fixtures and collateral, nor is there any evidence that this question was ever posed to its board of directors. Although Domestic, as it has alleged, may have intended to condition funding the loan upon the subordination of all PEDC's interests, it failed to prove that this actually occurred. The record demonstrates that the proposed subordination agreements and the actual vote of the board of PEDC referenced the real estate owned by the Millettes and Burgess Oakes and not the inventory and fixtures of Gallimaufrey. We are thus satisfied that the trial justice neither overlooked nor misconceived material evidence nor was he clearly wrong in holding that PEDC was the priority creditor.

Accordingly, we deny and dismiss the instant appeal and affirm the decision of the trial justice.