IMPERIAL CASUALTY AND
INDEMNITY CO.

v.

Amitie BELLINI et al.

Michael DeSantis

v.

Imperial Casualty and Indemnity
Co. et al.

Nos. 2003–480–Appeal, 2003–481–Appeal.

Supreme Court of Rhode Island.

Dec. 22, 2005.

Thomas R. Bender, Esq., Providence, for Imperial Casualty and Indemnity Co. et al.

Bernard P. Healy, Esq., Providence, for Michael DeSantis et al.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Chief Justice WILLIAMS, for the Court.

Michael DeSantis could not have known, as the stair he was descending collapsed beneath him, that he would fall into two decades of litigation. DeSantis's injury went uncompensated while a now-defunct corporation, a real estate buyer/seller, and a struggling insurance company battled the question of who was responsible to satisfy DeSantis's negligence judgment. Some twenty years later, we conclude that there is in fact a cushion for DeSantis's long-ago fall.

## I

### Facts and Travel

We first address the somewhat complicated procedural history of this case, which comprises three separate actions, in an attempt to clarify the relationships among the many parties. The first was a personal injury action brought and won by Michael DeSantis (DeSantis) against Norbell Realty Corporation (Norbell), the record owner of the property where DeSantis's accident occurred. The second was a declaratory judgment action brought by Imperial Casualty and Indemnity Company (Imperial) seeking a determination of its potential liability under an insurance policy that may have protected the premises in question, which named as defendants Norbell and Amitie Bellini (Bellini), the named insured on the policy and the primary principal/owner of Norbell. The third was a direct cause of action by DeSantis against Imperial, asserting that Imperial was liable for paying the judgment against Norbell. The latter two cases were consolidated for trial. Imperial petitioned this Court for certiorari, seeking reversal

of the motion justice's denial of its motion to dismiss and denial of its motion to sever the bad faith elements of DeSantis's claim. *See Imperial Casualty and Indemnity Co. v. Bellini*, 746 A.2d 130 (R.I.2000). We granted certiorari, denied the petition with respect to the motion to dismiss and granted it with respect to the motion to sever. We remanded the case to the Superior Court, where it was heard in January 2003. The trial justice found against DeSantis, Norbell and Bellini, and they appeal from that judgment.

The consolidated nature of the actions in this appeal—and the two decades of history that precede it—requires intense concentration to keep all the parties straight. For the purposes of this appeal, we will refer to Michael DeSantis, Amitie Bellini, and Norbell Realty Corporation collectively as "plaintiffs," and to Imperial Casualty and Indemnity Company and Reinsurance Solutions International, named in DeSantis's amended complaint as jointly liable with Imperial, collectively as "defendants." When referred to individually, each party or entity will retain his or her own specific title.

DeSantis, a United States Postal Worker, was delivering the mail at 24 Atwood Street[1] in Providence when the accident that precipitated this cause of action occurred. On October 8, 1985, after DeSantis made his delivery, he fell and injured himself when a step gave out beneath him. The facts that gave rise to this litigation began even earlier—on April 30, 1985, when Bellini, the owner of the 24 Atwood Street property, conveyed her interest in that property to Norbell, a corporation in which she served a major role. This conveyance was recorded on May 6, 1985, and on May 12 of that year Imperial issued an

insurance policy to Bellini, as named insured, covering several properties, including the Atwood Street property. No party disputes that Norbell was not listed on the May 12 policy as an additional insured for the Atwood Street property. On October 31, 1985, Imperial issued an endorsement to its policy, making Norbell an "additional insured" with respect to a separate property on the policy located at 109–111 Pocasset Avenue, in Providence.

Imperial received notice of a claim stemming from DeSantis's injuries in January 1986. DeSantis filed a claim against Norbell in Superior Court, seeking damages for personal injury. Imperial issued two reservation of rights letters while investigating the claims, both in December 1987. The second letter, dated December 30, 1987, raised the question of whether Norbell was in fact an additional insured under the policy. Nonetheless, Imperial defended Norbell in the action brought by DeSantis. The jury found for DeSantis and returned a verdict of $235,000, which was reduced to $155,000 after a motion for remittitur was filed. Norbell did not appeal; however, it did obtain a stay of execution pending resolution of the declaratory judgment action.

In October 1989, Imperial proceeded to file for declaratory judgment in United States District Court, which dismissed the matter based on the abstention doctrine. *See Imperial Casualty and Indemnity Co. v. Bellini*, 753 F.Supp. 58 (D.R.I.1991). On July 24, 1991, Imperial sent a dunning letter to Bellini demanding a $250 deductible payment and referencing three prior requests for that payment. Bellini complied with this demand by check dated August 29, 1991. Concurrently with De-

---

1. The site of Michael DeSantis's accident was a three-family house alternately referred to as 24 Atwood Street and 22–24 Atwood Street. We will refer to this property, for simplicity's sake, as 24 Atwood Street.

Santis's action against Norbell, Imperial filed a declaratory judgment action in Superior Court asking for construction and interpretation of the terms and conditions of the policy Imperial issued for the Atwood Street property. Although Imperial named only Norbell and Bellini as parties, DeSantis later intervened in the action. To add to this stew, after he won a judgment against Norbell in his personal injury action and while the declaratory judgment action was still pending, DeSantis filed a direct action against Imperial, seeking to hold Imperial liable for the judgment against Norbell. Imperial moved to dismiss the complaint, and the motion justice denied this motion but granted a motion to consolidate the declaratory judgment with DeSantis's direct action against Imperial. Imperial also moved to sever the bad faith claim from the other claims, which was denied. Imperial filed for certiorari on November 18, 1998, seeking review of interlocutory rulings: the denial of the motion to dismiss DeSantis's direct action against Imperial, another motion involving discovery issues, and the motion to sever the bad faith claim. We granted certiorari and, upon review, denied Imperial's petition concerning the motion to dismiss, but granted the petition to sever the bad faith claim from the equitable issues.

On remand, the case was heard in the Superior Court without a jury from January 13 to January 16, 2003. At trial, Melvin Epstein (Epstein), a former underwriter for Imperial, testified about the general practices of Imperial at the time of the incident. Epstein had absolutely no recollection of reviewing the application for the insurance policy covering 24 Atwood Street, nor did he know whether a binder had been issued.

Bellini testified that her family had been involved in real estate for three generations, and she began buying and selling property around the age of eighteen. She recalled transferring the 24 Atwood Street property to Norbell on April 30, 1985, to serve as additional collateral for the financing of the purchase of another piece of Providence real estate. Bellini testified that before she could use the Atwood Street property as security for a mortgage on the other property, she had to demonstrate insurance coverage on 24 Atwood Street. This insurance would have had to be in the name of the borrower, Norbell. Bellini said she made arrangements to acquire insurance, but could only "guesstimate" that "probably within a week or so" she contacted the insurance agent. Bellini also testified that upon receiving a request from Imperial for a deductible payment in connection with the investigation of the DeSantis claim, she called someone at the company to explain her relationship to Norbell, but she could not recall with whom she spoke. She could not recall who insured Norbell before she purchased an insurance policy from Imperial. She testified that she must have had a binder to present at the closing in order to obtain the mortgage on the other property.

DeSantis and Bellini both testified to an agreement between them assigning Bellini's rights to DeSantis and preventing DeSantis, in return, from any personal collection from Bellini. Ronald Carletti (Carletti), a former loan officer of Rhode Island Central Credit Union, testified that industry and company standards required that an insurance binder be present before a closing could take place. Carletti, the loan officer who conducted the closing where the Atwood Street binder would have been required, had no specific recollection of any of the relevant events or documents.

The trial justice then issued a written decision finding for defendants on their declaratory judgment action and against

plaintiffs on their claims for coverage. The trial justice also allowed Imperial to withdraw the $603,500 previously deposited with the court as security for the judgment obtained by DeSantis against Norbell. In addition, the trial justice lifted the stay of execution on DeSantis's judgment against Norbell.

The plaintiffs now appeal. It remains uncontested that DeSantis was injured on the Atwood Street property, that Bellini was not the owner of the Atwood Street property at the time of DeSantis's injury, and that Norbell was not a named insured on the policy issued by Imperial for the Atwood Street property.

## II

### Analysis

The plaintiffs appeal from the judgment for Imperial and the judgment against DeSantis, Norbell and Bellini. The plaintiffs contend that the trial justice committed clear error in his treatment of the equitable issues of reformation, estoppel and waiver, as well as by refusing to allow the plaintiffs a trial by jury and also in declining to apply the doctrine of spoliation and declining to address the issue of debt on judgment. For the reasons below, we reverse the judgment.

■ It is well settled that "[t]his Court will not disturb the findings of a trial justice sitting without a jury unless such findings are clearly erroneous or unless the trial justice misconceived or overlooked material evidence or unless the decision fails to do substantial justice between the parties." *Macera v. Cerra*, 789

A.2d 890, 892–93 (R.I.2002) (quoting *Harris v. Town of Lincoln*, 668 A.2d 321, 326 (R.I.1995)). "[I]f, on review, the record indicates that competent evidence supports the trial justice's findings, we shall not substitute our view of the evidence for his [or hers] even though a contrary conclusion could have been reached." *Nisenzon v. Sadowski*, 689 A.2d 1037, 1042 (R.I.1997) (quoting *Tim Hennigan Co. v. Anthony A. Nunes, Inc.*, 437 A.2d 1355, 1357 (R.I.1981)).

■ "A decision to grant or deny declaratory * * * relief is addressed to the sound discretion of the trial justice and will not be disturbed on appeal unless the record demonstrates a clear abuse of discretion or the trial justice committed an error of law." *Hagenberg v. Avedisian*, 879 A.2d 436, 441 (R.I.2005); *see also DiDonato v. Kennedy*, 822 A.2d 179, 181 (R.I.2003); *Sullivan v. Chafee*, 703 A.2d 748, 751 (R.I.1997).

### A

### Trial by Jury

The plaintiffs contend that DeSantis was denied the right to a jury trial and that this denial constitutes reversible error. We disagree. The plaintiffs arguably waived their right to jury trial and, regardless, the request for jury trial was not timely demanded.[2]

■ "Questions of law * * * are reviewed *de novo* by this Court." *Rhode Island Depositors Economic Protection Corp. v. Bowen Court Associates*, 763 A.2d

---

**2.** We note here that plaintiffs in their brief did not include any citations to the record in the lengthy section summarizing the facts. Article I, Rule 16(a)(1) of the Supreme Court Rules of Appellate Procedure requires an appellant to produce a "statement of the facts * * * together with page citations to the places in the record and the appendix where such can be found." We will not dismiss the appeal in this instance. However, we do not condone the disregard of established procedure. The mandate of Rule 16(a)(1) should be followed diligently.

1005, 1007 (R.I.2001). The right to trial by jury in Rhode Island is protected under article 1, section 15, of the Rhode Island Constitution. The Superior Court Rules of Civil Procedure detail the procedure of demanding and waiving a right to jury trial. Rule 38(b) of the Superior Court Rules of Civil Procedure provides that "[a]ny party may demand a trial by jury of *any issue triable of right by a jury.*" (Emphasis added.) "Once a demand for a jury trial is made pursuant to Rule 38(b), Rule 39(a) provides the only mechanism in which the parties or the court may waive a prior jury trial demand." *Van Cala v. Tiverton Getty,* 770 A.2d 851, 854 (R.I. 2001). Rule 39(a) of the Superior Court Rules of Civil Procedure provides, in pertinent part:

> "The trial of all issues so demanded shall be by jury, unless (1) the parties or their attorneys of record, *by written stipulation filed with the court* or by an oral stipulation made in open court and entered in the record, consent to trial by the court sitting without a jury or (2) *the court upon motion or of its own initiative finds that a right of trial by jury of some or all of those issues does not exist under the constitution or statutes of this state.*" (Emphases added.)

■ Although plaintiffs make no mention of this motion in their brief, plaintiffs filed a motion in Superior Court on January 16, 2002, to place the consolidated cases on the nonjury trial calendar. In this motion, plaintiffs moved to have the consolidated cases assigned to the continuous nonjury trial calendar, noting that the bad faith elements of the case previously had been severed.[3] On January 13, 2003, the day the consolidated cases were to be heard, plaintiffs submitted a motion that the case be tried in part with a jury. In the memorandum in support of this motion, plaintiffs suggested that a complaint for declaratory relief and a petition for reformation are both actions in equity, which ordinarily would not be tried by a jury. The plaintiffs, in their last-minute request for a jury trial, suggested that although the bad faith element of the case had been severed, it would be more economical to try all the issues together.

We held in *Hall v. Pryor,* 108 R.I. 711, 717, 279 A.2d 435, 438 (1971), that a defendant who orally agreed to a nonjury trial in a pretrial conference, then had his subsequent request for a jury trial denied by the trial justice, was not deprived of his right to a jury trial. The defendant's previous valid waiver meant that the trial justice did not deprive him of his right to jury by denying the later request for a jury. *Id.* at 714, 279 A.2d at 437. We noted in *Van Cala* that there was no evidence in the record of a waiver of the right to jury trial. *See Van Cala,* 770 A.2d at 854 ("The record is devoid of any stipulation written or otherwise by the parties relative to a waiver of a jury."). We also noted in that case, in determining that plaintiff's right to a jury trial should have been upheld, that "the trial justice made no finding that the issues before her were inappropriate for determination by a jury." *Id.* In the case before us, neither of these justifications applies. There is on the record written documentation relative to the waiver of a jury trial—specifically, plaintiffs' motion to have the consolidated cases heard on the nonjury calendar.

In addition, Rule 38(b)(1) requires that a motion for a jury trial be served "in writing * * * not later than 10 days after the service of the last pleading directed to

---

**3.** The bad faith elements were severed by this Court when we considered the case on certiorari. The plaintiffs specifically reserved their right to a jury trial on the bad faith claims in their motion of January 16, 2002.

such issue." The plaintiffs' motion on the first day of trial was not timely. Even if plaintiffs did not waive their right to jury trial with the written request to be placed on the nonjury calendar, they did not serve their demand for jury trial in the timely manner pursuant to Rule 38. *See also Duffy v. Mollo*, 121 R.I. 480, 490, 400 A.2d 263, 268 (1979) (holding that the trial court did not abuse its discretion by refusing to order a jury trial when the demand was not filed in a timely manner and there was no showing of excusable neglect).

## B

### Waiver

The plaintiffs offered three different theories at trial to support a finding that Imperial is liable through Norbell for De-Santis's injuries: first, that Imperial had waived the right to refuse coverage by demanding and subsequently receiving a $250 deductible payment from Norbell under the terms of the policies; second, that Imperial was estopped from denying coverage to Norbell; and third, that the contract should be reformed because of mutual mistake to reflect the intent of both parties to insure the property at Atwood Street. With regard to all three theories, plaintiffs maintain that the trial justice committed clear error in finding for the defendants. We address only waiver below, and hold that because substantial justice would not be done between the parties otherwise, the trial justice's finding must be reversed.

■ The plaintiffs contend that Imperial's demand for a $250 deductible payment, as well as its actions in general, were utterly inconsistent with Imperial's position that it was not liable to Norbell and that, therefore, the trial justice erred as a

matter of law in finding that Imperial did not waive its right to contest coverage. "As a general rule, the question of whether a party has voluntarily relinquished a known right is one of fact * * *." *Lajayi v. Fafiyebi*, 860 A.2d 680, 687 (R.I.2004) (quoting *Haxton's of Riverside, Inc. v. Windmill Realty, Inc.*, 488 A.2d 723, 725–26 (R.I.1985)). Findings of fact by a trial justice will not be disturbed by this Court "unless such findings are clearly erroneous or unless the trial justice misconceived or overlooked material evidence or unless the decision *fails to do substantial justice between the parties.*" *Macera*, 789 A.2d at 892–93 (quoting *Harris*, 668 A.2d at 326) (emphasis added).

"Waiver is the voluntary intentional relinquishment of a known right. It results from action or nonaction * * *." *Haxton's of Riverside, Inc.*, 488 A.2d at 725 (quoting *Pacheco v. Nationwide Mutual Insurance Co.*, 114 R.I. 575, 577, 337 A.2d 240, 242 (1975)). This Court has found that the acceptance of a premium payment by an insurance company after a breach by the insured effectively waived the insurance company's right to deny coverage. *Milkman v. United Mutual Insurance Co.*, 20 R.I. 10, 13, 36 A. 1121, 1122 (1897). This Court in *Milkman* agreed with the Indiana Supreme Court that "[b]y accepting payment [the insurance company] affirmed the validity of the policy, and tacitly asserted that the policy was in force from the time it was executed." *Id.* (quoting *Phoenix Insurance Co. v. Tomlinson*, 125 Ind. 84, 25 N.E. 126, 127 (1890)).

■ We acknowledge that there is a difference between the premium payment in *Milkman*[4] and the deductible payment in this case. In this case, Imperial demanded not a premium payment in return

---

4. We also note that defendants chose not to discuss *Milkman* in their brief, thus providing us with no argument as to how *Milkman's* holding might be distinguished or rejected.

for coverage, but a deductible payment for the adjusting and legal fees incurred in investigating DeSantis's claim against Norbell. The defendants maintain that the payment of a deductible under these circumstances is intended to cover the costs of investigation and legal defense. However, it is significant to us that the demands for the deductible payment were made in 1991, several years after Imperial's reservation of rights letters. In *Milkman*, the insurance company continued to demand premium payments after it obtained knowledge of the insured's breach of a contractual condition. *Milkman*, 20 R.I. at 11, 36 A. at 1122. In this case, *with full knowledge of the inconsistency concerning the named insured*, the insurance company demanded a deductible payment. At oral argument, defendants suggested that the period of investigation envisioned by the policy's deductible provision was intended to discover whether Bellini was in fact a registered real estate manager, in which case coverage would have extended to Norbell. In our opinion, the several years between Imperial's reservations of rights in 1987 and its demands for deductible in 1991 provided ample time for investigating this one admittedly salient, but fairly straightforward, point. By the time of the demand for deductible, it—as did the insurance company in *Milkman*—had knowledge of the coverage inconsistency at the heart of this case. Acknowledging that "a party * * * may waive [a right] by conduct inconsistent with the express terms of the agreement," *Haxton's of Riverside, Inc.*, 488 A.2d at 726, defendants assert that their conduct in demanding a deductible cannot constitute waiver since this behavior was not inconsistent with the contract, but rather in direct compliance with the contract's explicit terms. We disagree with the logic that an insurance company may avoid waiver by, on the one hand, insisting on compliance with an insurance

contract, and, on the other hand, insisting that the insurance contract affords no coverage to the party claiming defense or indemnity under the provisions of the policy.

The trial justice found convincing the defendant's assertions that the $250 deductible was intended to defray legal and adjusting costs and that this provision was made explicit in the policy. However, we look to the excessive period of time between the reservation of rights letters and the dunning letters concerning the $250, as well as to the facts particular to this case. In our opinion, adherence to *Milkman* will allow for substantial justice. We reverse the finding of the trial justice and hold that Imperial did, in fact, waive its right to deny coverage under the insurance contract.

Because we reverse on the issue of waiver, we need not reach the issues of estoppel, reformation, and spoliation.

### Conclusion

In closing, we note that the extensive and somewhat muddied factual and procedural history—as well as witnesses scattered to the four winds, with varying levels of recollection of the events at hand—must have made presiding over this case at trial a challenging task. Nevertheless, for the foregoing reasons, we reverse the judgment of the Superior Court and remand the case for further proceedings not inconsistent with this opinion, and for trial on the bad faith and debt on judgment claims. The record shall be returned to the Superior Court.