DECISION
This case is before the Court on appeal from a decision by the Rhode Island State Labor Relations Board (Board), which found that the Chief Mechanic position, within the Town of Scituate's (Town) Department of Public Works (DPW), was not supervisory and therefore included in a previously certified bargaining unit. Jurisdiction is pursuant to G.L. 1956 § 42-35-15.
 FACTS AND TRAVEL
The Town of Scituate's Public Works Department consists of a relatively small staff of fifteen individuals, led by the Director, Richard Iverson. Under Mr. Iverson's direction are two Foremen, eight Drivers/Laborers, a Clerk, a Custodian, a Chief Mechanic, and a Mechanic. The DPW maintains the Town's highways and properties with a yearly budget of just over a million dollars.
 The Chief Mechanic Position
The Chief Mechanic and the Mechanic service the roughly one hundred pieces of equipment owned and used by the Town, the DPW, the police department, and the fire department — ranging from snowplows and police cars to lawnmowers and sanders. Dean Randall, the Town's Chief Mechanic, initially started working for the Department of Public Works as a mechanic in September of 1994, but was subsequently promoted to Chief Mechanic in 1997. As Chief Mechanic, Mr. Randall spends seventy-five percent of his eight hour work day engaged in the actual, physical maintenance of Town-owned machines. The remainder of his time is spent organizing and prioritizing the various work orders that come in to the Town's garage, in addition to filling out the forms that are incidental to this work. During the prioritization of daily work, Mr. Randall generally reserves the more complex tasks for himself, due to his superior experience, leaving the remaining work to be performed by Nate Naylor, the other sole mechanic. At times, Mr. Randall would elicit help from some of the other eight Laborers/Drivers, with the approval of either the Director or one of the Foremen.
Although Mr. Randall has never fired a Town employee, he did participate in the hiring process of the other Town mechanic. As part of the hiring process, Mr. Randall first reviewed all of the applications. Selected applicants were then interviewed by the Director, the Assistant Director (a position now vacant), and Mr. Randall. An initial consensus was reached that Mr. Naylor was the most qualified applicant, but the ultimate hiring decision rested with the Director, subject to the approval of the Town's Council. The Director hired Mr. Naylor, with the Town Council's approval in September of 1998.
 The Bargaining Unit Certification
On August 6, 2002, Teamsters Local Union No. 251 (Local 251) petitioned the Rhode Island State Labor Relations Board to become the exclusive bargaining representative for all drivers, laborers, and mechanics employed by the Town of Scituate. The Town and Local 251 subsequently entered into an "Agreement for Consent Election" which, among other things, provided that the appropriate unit for representation included:
 All Driver/Laborer/Operators, Driver/Laborer/Equipment Operators, and Mechanics, but excluding the Director, Assistant Director, Building Custodians, Forepersons, Receptionists/Clerks, and Driver/Mealsite Coordinators. (The position of Chief Mechanic will be allowed to vote under challenged ballot, and the Board will determine the eligibility of the position at a later date.)
On October 15, 2003, a representation election was held and, a week later, on October 22, 2003, Local 251 was certified by the Board as the exclusive bargaining representative for the above unit of employees.
On August 31, 2004, a hearing was held to determine if the Chief Mechanic was a supervisory position, and if, therefore, it should be included or excluded from the certified bargaining unit. Mr. Iverson and Mr. Randall were the only two individuals who testified at the hearing; the Human Resource Policy Manual for the Town of Scituate (Manual) was the only document admitted into evidence. On February 10, the Board issued a written decision concluding that the Chief Mechanic position was not a supervisory position, and that it should therefore be included in the certified bargaining unit. Fifteen days later, on February 25, 2005, the Plaintiff Town filed a timely appeal with this Court.
 STANDARD OF REVIEW
The Superior Court's review of an appeal of an agency decision is governed by G.L. 1956 § 42-35-15(g), which provides:
 The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or [sic] law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted use of discretion.
Under the provisions of the Administrative Procedures Act, this Court, sitting as an appellate court with a limited scope of review, is not permitted to substitute its judgment for that of an agency with respect to the credibility of the witnesses or the weight of the evidence as to questions of fact. Center forBehavioral Health v. Barros, 710 A.2d 680, 684 (R.I. 1998);Mine Safety Appliances Co. v. Berry, 620 A.2d 1255, 1259 (R.I. 1993). "The Superior Court is confined to a determination of whether there is any legally competent evidence to support the agency's decision." Environmental Scientific Corp. v. Durfee,621 A.2d 200, 208 (R.I. 1993). Thus, if the decision below was based on sufficient legally competent evidence in the record, the reviewing court is obliged to affirm the agency's decision.Johnston Ambulatory Surgical Assocs., Ltd v. Nolan,755 A.2d 799, 805 (R.I. 2000). Legally competent evidence is "marked `by the presence of `some' or `any' evidence supporting the agency's findings.'" State v. Rhode Island State Labor Relations Board,694 A.2d 24, 28 (R.I. 1997) (citing Environmental Scientific,621 A.2d at 208).
"Questions of law, however, are not binding upon the court and may be reviewed to determine what the law is and its applicability to the facts." Narragansett Wire Co. v. Norberg,118 R.I. 596, 607, 376 A.2d 1, 6 (1977). The Superior Court also has the authority to remand a case "to correct deficiencies in the record and thus afford the litigants a meaningful review."Lemoine v. Dept. of Mental Health, Retardation Hospitals,113 R.I. 285, 290, 320 A.2d 611, 614 (1974).
 THE MUNICIPAL EMPLOYEES' ARBITRATION ACT
The Municipal Employees' Arbitration Act, G.L. (1956) §28-9.4-1 et seq. (Act), declares that it is "the public policy of this state to accord to municipal employees the right to organize, to be represented, to negotiate, and to bargain on a collective basis with municipal employers." § 28-9.4-1. The Act defines municipal employees as "any employee of a municipal employer, whether or not in the classified service of the municipal employer." § 28-9.4-2(b). The Act excludes from that definition, inter alia, elected and administrative officials, board and commission members, and confidential and supervisory employees. § 28-9.4-2(b)(1)-(2), (4).
The Rhode Island Supreme Court has repeatedly held that "supervisory employees are prohibited from engaging in collective bargaining as a matter of law." Rhode Island Laborers' DistrictCouncil v. City of Providence, 796 A.2d 443, (R.I. 2002); seealso, e.g., Macera v. Cerra, 789 A.2d 890, 895 (R.I. 2002). The rationale for this exclusion is that "[i]t is in the public interest that equality of bargaining power be established and maintained." § 28-7-2(a). In short, our Supreme Court has noted that to include supervisory employees in a collective bargaining unit would create a conflict of interest and "`an imbalance in the bargaining power between the union and employer.'" Town ofNorth Providence v. Local 2332, 725 A.2d 888, 889 (R.I. 1998) (citation omitted).
In Board of Trustees, Robert H. Champlin Memorial Library v.Rhode Island State Labor Relations Board, 694 A.2d 1185, 1189-90
(R.I. 1997), our Supreme Court adopted the federal labor law definition of a supervisor, which is set forth in29 U.S.C. § 152(11) as:
 any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.
An employee may be a supervisor without meeting all the criteria set forth in 29 U.S.C. § 152(11), and may in fact be considered a supervisor even if only one criterion is met. SeeButler-Johnson Corp. V. NLRB, 608 F.2d 1303, 1306 n. 4 (9th Cir. 1979) ("The enumerated functions in Section 2(11) are to be read in the disjunctive, and the existence of any of them, regardless of the frequency of their performance, is sufficient to confer supervisory status.") However, any power listed in29 U.S.C. 152(11) "must involve the exercise of independent judgment in order to brand the holder of the power as a supervisor," as is stated in the statute. Telemundo de Puerto Rico, Inc. v. NLRB,113 F.3d 270, 274 (1st. Cir. 1997). The burden of proving that an individual is a supervisor is on the party alleging such status.NLRB v. Kentucky River Community Care, 532 U.S. 706, 712
(2001).
 BOARD'S DECISION THAT CHIEF MECHANIC IS NOT A SUPERVISOR
Relying on the testimony given at the Board's hearing, as well as the Manual admitted into evidence, the Town argues that the Board's decision is clearly erroneous because it failed to account for the fact that supervisory authority is based on the possession of supervisory power, and not on the use or the frequency of use of that power. See, e.g., BeverlyCalifornia Corp. v. National Labor Relations Board,970 F.2d 1548, 1550 n. 3 (6th Cir. 1992) (stating that it "is the existence of authority that counts under [29 U.S.C. § 152(11)], and not the frequency of its existence.") Accordingly, the Town argues that the Board erroneously relied on evidence of howoften Mr. Randall hired, disciplined, assigned, or transferred other employees in coming to the conclusion that the Chief Mechanic position is not supervisory.[1]
More specifically, the Town alleges that the Board clearly erred in its decision by pointing to four of the enumerated indicia listed in § 152(11).[2] The Town asserts that the Board clearly erred because: (1) it failed to correctly characterize Mr. Randall's role in the hiring process of Mr. Naylor, the Town's other mechanic; (2) it pretermitted testimony by the Director stating that Mr. Randall had the authority to discipline the Town's other mechanic; (3) it wrongly characterized Mr. Randall's authority to assign work to the other mechanic; and (4) it neglected to account for testimony suggesting that the Chief Mechanic was able to effectively recommend the transfer of some or all of the eight Driver/Laborers. To support these assertions, the Town cites to various decisions issued by the National Labor Relations Board (NLRB).
In particular, the Plaintiff Town cites to the case ofArlington Masonry Supply, Inc., 339 NLRB 817 (2003), not only to demonstrate that the Board clearly erred with respect to Mr. Randall's authority to hire, discipline, assign, and transfer, but also to support its contention that Mr. Randall exercised these functions with the use of independent judgment. Although there are factual similarities between this case and Arlington,
the conclusion of the NLRB in Arlington is not dispositive in this case.
In Arlington, the NLRB found a "lead" mechanic to be a supervisor because he prioritized work, inspected the work of the other mechanic, created a work schedule, granted time off, and assigned hours and overtime — all without daily supervision. Likewise, Mr. Randall — without much day to day supervision — prioritizes work, inspects the work of the other mechanic, and reserves the more complex work for himself. But, as already noted, this Court will not reverse the decision of an agency merely because a different interpretation of the facts is reasonable. "[W]hen an administrative agency interprets a regulatory statue that the General Assembly empowered the agency to enforce, a court reviewing the agency's interpretation of the statute as applied to a particular factual situation must accord that interpretation `weight and deference as long as that construction is not clearly erroneous or unauthorized.'" LaborReady Northeast, Inc. v. McConaghy, 849 A.2d 340, 344 (R.I. 2004) (citing In re Lallo, 768 A.2d 921, 926 (R.I. 2001)). To wit, both the NLRB and the Rhode Island Labor Relations Board's interpretation of these similar facts are capable of being correct.[3]
In short, there was ample evidence before the Board to support the conclusion that the Town's Chief Mechanic position was not supervisory. Although Mr. Randall participated in the hiring process of the Town's other mechanic, both the Chief Mechanic and the Director agreed that the authority to hire was vested solely with the Director, subject to the approval of the Town's Council. (Tr. at 18, 20). Likewise, although there was testimony that the Chief Mechanic could "verbally" discipline the other mechanic, neither the Director nor Mr. Randall were able to describe a single instance when Mr. Randall had disciplined a co-worker, nor were they able to cite to a provision in the Town's Manual which granted such authority. (Tr. at 323-3, 38). Accordingly, the Board did not clearly err when it concluded that Mr. Randall did not have the authority to hire or discipline other employees.
The Board's decision with respect to the Chief Mechanic's ability to assign work is also based on legally competent evidence. The decision highlights the fact that Mr. Randall has no control over what equipment comes into the garage — the assignment of work derives from various Town departments, such as the police department or the fire department. (Bd. Decision at 5). Furthermore, Mr. Randall testified at the hearing that he worked "side-by-side" with Mr. Naylor (Tr. at 70, 79), and that he prioritized the work orders based on his superior experience as a mechanic. (Tr. at 45-46). The Board's interpretation of these facts is perfectly reasonable: Mr. Randall's ordering of daily tasks is routine because it involves the mere allocation of less complex mechanic work to Mr. Naylor.
Lastly, although the Chief Mechanic's transfer requests were consistently granted, the Director stated that these requests were granted only with the approval of either of the two Foremen. (Tr. at 38). The Board reasonably concluded that these seasonal requests were routine in nature because Mr. Randall merely requested more laborers as the work load increased. (Bd. Decision at 4). For the foregoing reasons, the Board's decision finding that the Chief Mechanic position was not supervisory and therefore properly included in the aforementioned bargaining unit is affirmed.
 CONCLUSION
After a review of the entire record this Court finds that the Board's decision is supported by substantial, reliable, and probative evidence and is not affected by error of law. The substantial rights of the Plaintiff have not been prejudiced. The decision of the Board is affirmed.
Counsel shall submit an appropriate order for entry.
[1] The Plaintiff, however, without citing to case law or to the transcript developed at the hearing, rests this argument on the convenient assertion that the Director, in effect, delegated certain functions of his supervisory powers to the Chief Mechanic position when he chose not to fill the presently empty Assistant Director position. The Court finds this reasoning unpersuasive. The fact that the Director did not fill a vacant position does not mean, a fortiori, that those powers were delegated to the Chief Mechanic by default.
[2] The Plaintiff briefly mentions, in an introductory paragraph, that the Board clearly erred with respect to Mr. Randall's authority to effectively direct employees, but fails to develop the argument beyond that declaratory statement. "`[S]imply stating an issue for appellate review, without a meaningful discussion thereof or legal briefing of the issues, does not assist the Court in focusing on the legal questions raised, and therefore constitutes a waiver of that issue.'"Catucci v. Pacheco, 866 A.2d 509, 516 (R.I. 2004) (quotingWilkinson v. State Crime Laboratory Commission, 788 A.2d 1129,1131 n. 1 (R.I. 2002)). Regardless, the hearing transcript, as well as the Board's decision, reflects that although Mr. Randall reviewed the other Town Mechanic's work, he did so only sporadically and for safety purposes. (Tr. 68, 70.) Accordingly, the Board's decision, with respect to the Chief Mechanic's direction of work, was not clearly erroneous.
[3] The court, however, in Arlington also relied on evidence that the "lead" mechanic created work schedules, assigned hours, and granted overtime. None of these powers of authority are vested in the Town of Scituate's Chief Mechanic position.