NOTE. — See <i>State v. Smith,</i> 14 R. I. 100.

========

## JOHN McGRATH *vs.* LAWRENCE KENNEDY.

In Pub. Stat. R. I. cap. 246, § 16, the provision, "All bonds, notes, judgments, mortgages, deeds, or other securities, as well as promises, given or made for money, . . . won at any game, or by betting at any race or fight, . . . shall be utterly void," applies to wagers on the result of a game made by others than the players of the game, as well as to wagers made by the players themselves.

Sketch of the history of this provision.

A. deposited with a stakeholder the amount of his wager on a match at pool between C. and D. While the games were playing, but after it was clear that A. would lose, A. denounced the match to the stakeholder as a fraud, and notified the stakeholder not to pay the money over. At the close of the match the stakeholder paid over the amount to the winner of the wager, whereupon A. sued the stakeholder for his deposit.

*Held,* that A. should recover.

DEFENDANT'S petition for a new trial.

*January* 2, 1866. DURFEE, C. J. This is an action to recover of the defendant the sum of $500, delivered to him as stakeholder by the plaintiff. At the trial, the plaintiff submitted testimony to show that the money was delivered in pursuance of a bet, each party to which put up $500; that the bet was on certain games of "pool," to be played by one Shaw against one Sullivan, the

plaintiff betting that Sullivan, and the other party that Shaw, would be the winner in a contest of forty-one games; that, after thirty or more games had been played, while the contest was still undecided, but after it had become apparent that Shaw would probably be the winner, the plaintiff went to the defendant and told him he thought the game was a "skin game," or a "snide game," and that he must not pay the money over; that the defendant replied that he should pay it over to the winner, and asked the plaintiff whether, if his man won, he would take the whole of the money or only his part, which inquiry the plaintiff answered by saying that he should take only his part; and that the plaintiff then left, the contest being still undecided. The plaintiff subsequently made a demand upon the defendant for the $500 delivered to him, and, the defendant having failed to repay, brought this action, claiming that the bet had been rescinded before the money was paid upon it. The money was, in fact, paid over to the other party the day the games were played, Shaw being the winner.

At the close of the plaintiff's testimony in chief, the defendant moved for a nonsuit, contending that if the money was put up on a bet the bet was legal, and that he, therefore, had a right to pay it over; and further contending, on a construction which he put upon certain parts of the testimony, that there was no bet, the money having been put up to insure the playing of the games, under an agreement that, if Sullivan won, the plaintiff was to have the money which he had put up returned to him, Sullivan taking the other $500; and *vice versâ* if Shaw was the winner. The court ruled that the statute was broad enough to cover a bet of the character in evidence; that, the bet being illegal, the plaintiff had a right to withdraw from it, and, if he notified the defendant of his withdrawal while the money was in the defendant's hands, he had a right to recover. The defendant excepted to this ruling.

We do not think there can be any doubt that there was a bet, even if the terms were as argued. If such were the terms, nevertheless the money of each party was hazarded upon the uncertain result of a series of games, and to the loser the effect was the same whether the money lost went to the other party to the wager

or to the victor in the games. If there was no bet, it must be because neither party was to gain by it, though one or the other must lose, and because it was, therefore, *nudum pactum*. If this were so, it would not help the defendant; for if the bet, being *nudum pactum*, was not binding, the plaintiff, of course, had a right to withdraw his money. The important question is whether the bet was illegal under the statute, Pub. Stat. R. I. cap. 246, § 16, which provides as follows, to wit: —

"All bonds, notes, judgments, mortgages, deeds, or other securities, *as well as promises*, given or made for money . . . *won at any game*, or by betting at any race or fight, . . . shall be utterly void."

The answer to this question depends upon the construction given to the words italicized. A bet is a promise on the part of each of the betting parties to pay to the other party the amount of his bet if he loses. The promise may be contingent in its inception, but it becomes absolute as soon as the bet is determined. We do not see that putting the money in the hands of a stakeholder, to be paid over by him when the bet is determined, changes the character of the promise. The question therefore turns on the meaning of the words "money won at any game." Do the words include money won by betting on the game as well as money won by playing it? A reference to the earlier forms of the section affords light on this point. The section in its earliest form appears in the Digest of 1844, pp. 396, 397. In that digest, the playing of certain games for money, or the betting on them, was prohibited under a penalty. Then followed the section declaring that "all bills, bonds, notes, judgments, mortgages, deeds, or other securities, given for money or lands, houses or other things, won by playing at any of the aforesaid games, or by betting on either side of such as play at any of the aforesaid games, . . . shall be utterly void." The language is unambiguous. It plainly extends to money won not only by playing, but also by betting without playing. The statute remained down to 1857. In the Revision of 1857, cap. 218, the provisions prohibiting the playing of certain games for money or the betting on said games were omitted. The section under consideration was revised, and, with some differences immaterial here, was expressed as now, except that the words "or

by betting at any game" immediately followed the words " won at any game." Rev. Stat. R. I. cap. 216, § 16. We think there can be no doubt that the section as then expressed extended to money won not only by playing, but also by merely betting. The words " or by betting at any game" were struck out in 1872 in the General Statutes. The question is, therefore, whether they were struck out to change the meaning or because they were thought to be superfluous, the meaning being the same without them. We know of no change of public sentiment which makes it probable that the General Assembly could have intended to change the meaning by narrowing it. We feel bound, therefore, to treat the change as a mere verbal change, if we can reasonably do so. We think we can; for, though it is doubtless more usual to say that a person has won money at a game when he has won it by playing the game than when he has won it by betting on another's play, yet it is doing no violence to the language to find that the phrase " money won at any game" includes money won by betting at the game as well as money won by playing it. Strictly speaking, indeed, the money is won by betting when it is played for, the players being the bettors; the only difference between such a bet and a bet by the bystanders being that, when the players bet, they play to win the bet as well as the game, but without the bet there would be no money to win. The first exception is therefore overruled.

The defendant makes the point that the plaintiff was not entitled to a verdict because the money was not demanded by the plaintiff before it was paid over. The plaintiff, however, though he may not have demanded the money before it was paid over, did, according to his evidence, notify the defendant not to pay it over, and, after such notice, we think the defendant had no right to pay it over, and if he did, he did it at his own risk. *Adkins* v. *Flemming*, 29 Iowa, 122. No question is made in regard to the demand subsequently made, except that it was too late.

Other exceptions were taken, but we do not think they show a case for a new trial. Nor do we think that the defendant is entitled to a new trial because the verdict is against the evidence in the respects pointed out by him,          *Petition dismissed.*

*Dexter B. Potter*, for plaintiff.

*John M. Brennan*, for defendant.