Michelle Ann THIBAUDEAU

v.

Andrew P. THIBAUDEAU.

No. 2007–107–A.

Supreme Court of Rhode Island.

May 21, 2008.

John D. Lynch, Esq., Warwick, for Plaintiff.

Thomas M. Dickinson, Esq., for Defendant.

Present: WILLIAMS, C.J., and GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice ROBINSON for the Court.

The defendant, Andrew P. Thibaudeau, appeals from a Family Court judgment rendered in this statutory "protection from abuse" action.[1] He is aggrieved by the fact that the Family Court has prohibited him from "contacting, assaulting, molesting, or otherwise interfering with" the plaintiff, Michelle Ann Thibaudeau, the defendant's estranged wife.

This case came before the Supreme Court for oral argument on March 5, 2008, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After considering the rec-

1. Pursuant to G.L.1956 § 15–15–3, a person suffering from domestic abuse may file a com- plaint in Family Court seeking protection from abuse.

ord, the memoranda submitted by the parties, and the oral arguments of counsel, we are of the opinion that cause has not been shown and that the case should be decided at this time.

For the reasons set forth below, we affirm the judgment of the Family Court.

## Facts and Travel

On December 11, 2006, plaintiff filed a complaint in Family Court seeking a restraining order against her estranged husband, the defendant. At that time, a divorce proceeding between the parties was pending in the Family Court.[2]

The complaint whereby plaintiff sought protection from alleged abuse appears to have been prompted by an incident that occurred on the evening of Saturday, December 9, 2006. On that day, defendant was scheduled to drop off the couple's minor child at plaintiff's home at approximately 5 p.m. According to the testimony of plaintiff, she asked her mother, Mary Jo Defraga, to go to defendant's car to get the child from his father so that she could avoid a confrontation with him. Ms. Thibaudeau testified that she watched from a nearby window as her mother approached the vehicle. She testified that, although she could not hear the conversation between the two adults, she witnessed defendant drive away with their son still in the car.

The plaintiff testified that Mr. Thibaudeau returned within approximately three to five minutes, and again Ms. Defraga walked out to the car to get the child. The plaintiff testified that, at that point, she could hear defendant screaming at her mother and so she decided to go outside to determine what was happening. Once outside, Ms. Thibaudeau noticed that defen-

dant had exited the vehicle; she walked to the rear side door of the car and waited for her son to exit the car.

According to the testimony of plaintiff, defendant then approached her and, in her words, "banged into [her] with his chest." The plaintiff testified that she lost her balance as a result of defendant's bumping into her, but that she did not fall to the ground. Ms. Defraga's testimony corroborated plaintiff's description of these events; she testified that defendant "bumped into Michelle" and that he "pushed her."

Following the "bumping" incident, defendant removed the child from the vehicle. The plaintiff then took the child by the hand, and they walked into the house; shortly thereafter, plaintiff testified, she placed telephone calls both to her attorney and to the Warren Police Department.

The plaintiff testified about a number of factors that motivated her desire to seek protection from the court. First, she testified that she was concerned about her son witnessing such confrontations between his parents. She also testified that she was afraid of defendant: she stated that she had "become fearful of [defendant], his reaction, and his hostility." She further testified that she had the impression that defendant was "becoming unpredictable." Additionally, plaintiff testified that she had seen defendant and members of his family driving past her house "several times everyday" and that members of defendant's family sometimes approached her "in a threatening way."

The defendant testified that he neither pushed plaintiff on the evening in question nor had any other physical contact with her at that time. The defendant testified that he arrived at plaintiff's home at approximately 5 p.m., accompanied by his

---

**2.** Pursuant to the explicit terms of the statute, "protection from abuse" actions are "inde-

pendent of divorce proceedings." Section 15–15–2(a).

own father, to drop off the couple's son. According to defendant's testimony, he did not want to leave his son with his mother-in-law, and he wondered why plaintiff would not come out of the house to get her son.

The defendant testified that he then left the area in his vehicle for a few minutes because he had forgotten the child's diaper bag. When defendant returned, he saw his mother-in-law once again exit the house in order to get her grandson. At that point, defendant testified, he exited the vehicle and began to speak with Ms. Defraga. In his words, the conversation became "a little loud;" he said that, at that point, Ms. Defraga returned to the house to tell her daughter to come outside.

The defendant testified that he then placed his son's diaper bag on the ground between himself and plaintiff, picked up his son and removed him from the vehicle, and gave him a hug and a kiss and told him that he loved him. The defendant testified that plaintiff was using her telephone and that he heard her say something on the telephone "to the effect of he just put him down instead of handing him to me," which statement defendant testified he considered to be "kind of abnormal."

According to defendant, he never came close enough to plaintiff to touch her; he denied that any physical contact occurred. It was further defendant's testimony that he placed a telephone call to the police department and informed the police department that he had the impression that plaintiff was going to make a false allegation against him because of what he had heard her say while she was on the telephone during their encounter. He testified that he heard her say, "he just pushed me in the driveway." The defendant contends in his memorandum to this Court that the person with whom plaintiff was

speaking on the telephone was her boyfriend, a Warren police officer.

During the hearing, defendant played for the court an audio recording that he had made on December 9, when he pulled into the driveway of plaintiff's home after having gone to his house in order to retrieve his son's diaper bag. The defendant stated that the duration of the recording was about two minutes; he also stated that he had not abridged or edited the recording. The recording was played during the trial, but it was not transcribed into the record.

The hearing justice rendered a bench decision following the presentation of the evidence. In rendering that decision, the hearing justice discussed the credibility of the three testifying witnesses; he also discussed the audio recording and a report written by a guardian *ad litem* in connection with the pending divorce proceeding. That report was entered as an exhibit in the divorce proceeding, but was not formally presented as evidence in the domestic abuse case. The hearing justice stated:

"There are a couple of significant aspects with respect to the relationship between the Plaintiff and Defendant, other than the normal relationship of people going through a divorce. On page 28 of the report, there is an analysis done by the guardian ad litem, and certain conclusions that are part of this full exhibit. * * * The guardian states very specifically, quote, Mr. Thibaudeau really has no respect for his wife. While [the child] is young, he may not completely understand the ramifications of this, but there is no doubt in my mind if these feelings continue, the child will be more than aware of it * * *."

After discussing the report, the trial justice went on to discuss the "hostility and anger" that defendant evinced on the audio recording. In the hearing justice's words,

the tape that defendant introduced, rather than being supportive of the defense its proponent was attempting to mount, was "one of the best pieces of evidence that could have been introduced on behalf of the *Plaintiff.*" (Emphasis added.) The hearing justice observed that the audio recording "is certainly not something that benefits the Defendant."

Finally, the hearing justice made a credibility determination with respect to plaintiff. He characterized her testimony as having been "clear, concise, uncontradicted."

The hearing justice went on to enjoin defendant "from contacting, assaulting, molesting, [or] otherwise interfering with the Plaintiff at her home, on the street, elsewhere, directly or indirectly."[3] He further stated to defendant: "You violate this restraining order, and you will be subject to both civil ramification and sanctions in the Family Court and criminal sanctions and ramification in the District Court."

## Standard of Review

■ When reviewing the findings of a hearing justice sitting without a jury in a civil matter, it is well settled that this Court will not disturb those findings "unless such findings are clearly erroneous or unless the trial justice misconceived or overlooked material evidence * * *." *Notarantonio v. Notarantonio,* 941 A.2d 138, 144 (R.I.2008) (internal quotation marks omitted); *see Brown v. State,* 702 A.2d 1171, 1171 (R.I.1997) (mem.). If our review of the record before us "indicates that competent evidence supports the [hearing] justice's findings, we shall not substitute our view of the evidence for his [or hers] even though a contrary conclusion could have been reached." *Imperial Casualty and Indemnity Co. v. Bellini,* 888 A.2d

957, 961 (R.I.2005) (internal quotation marks omitted).

## Analysis

On appeal, defendant presents two arguments in support of his claim that this Court should reverse the judgment of the hearing justice: (1) that, in making his decision in this case, the hearing justice erred when he considered the report of guardian *ad litem;* and (2) that plaintiff did not offer sufficient evidence to prove that she was a victim of domestic abuse. We disagree with defendant that the hearing justice's decision was the product of reversible error.

■ First, with respect to defendant's argument that the hearing justice's reference to the report of the guardian *ad litem* constituted an impermissible use of evidence that was not in the record, it is our unequivocal view that the hearing justice should not have referred to a document that was not actually entered into evidence in the proceeding before him. *See Arnold v. Lebel,* 941 A.2d 813, 821 (R.I.2007). However, the sum of the other evidence supporting the hearing justice's decision indicates to us that his consideration of the report was not an inextricable component of his analysis of the case.

We encountered a similar set of facts in the case of *Guertin v. Guertin,* 870 A.2d 1011 (R.I.2005), where we considered whether or not a Family Court justice erred in considering the results of a polygraph examination of a child's mother in the course of ruling on the father's motion to modify custody and/or placement of the child. *Id.* at 1013. That polygraph examination was part of a report that was prepared by a court-appointed psychologist, but it had not been formally entered into

---

**3.** The restraining order will expire on December 18, 2009.

evidence in the hearing on the motion. *Id.* As in the instant case, the Family Court justice in *Guertin* made reference to the non-record evidence, but she also considered other evidence that was submitted during the hearing on the motion. *Id.* at 1019.

In *Guertin,* we held that, although the hearing justice's reference to the polygraph examination may have been "imprudent," it constituted harmless error when viewed in the context of the other evidence that was properly before her. *Guertin,* 870 A.2d at 1019–20. Accordingly, we stated that, although the references to the polygraph examination were improper, the Family Court justice properly relied on "ample evidence independent of the references to the polygraph examination to support her ultimate decision * * *." *Id.* at 1018.

In the instant case, the hearing justice relied on sufficient evidence independent of the report of the guardian *ad litem* when he rendered his decision on plaintiff's request for a restraining order against defendant. He specifically concluded that plaintiff's testimony was credible, characterizing it as "clear, concise, uncontradicted," and he also pointed to what he perceived as defendant's "hostility and anger" as demonstrated in the audio tape that defendant had introduced. The plaintiff and her mother both testified that defendant became loud during the incident in the driveway; they also both testified that defendant bumped or pushed plaintiff on the evening of December 9, 2006.

We conclude that the just-discussed evidence was sufficient, independent of the report of the guardian *ad litem*, to support the decision that the hearing justice reached. Any error in the hearing justice's reference to the report was, therefore, harmless.

Secondly, with respect to defendant's contention that plaintiff offered insufficient evidence to demonstrate that she was a victim of domestic violence, we disagree with his arguments.

General Laws 1956 § 15–15–1 provides the definition of domestic abuse that guides our inquiry into the issue of whether or not plaintiff demonstrated that she was a victim of domestic abuse. That definition provides as follows:

> " 'Domestic abuse' means the occurrence of one or more of the following acts between present or former family members, parents * * *:
>
> "(i) Attempting to cause or causing physical harm;
>
> "(ii) Placing another in fear of imminent serious physical harm * * *." Section 15–15–1(2).

In the instant case, the hearing justice concluded that plaintiff was a victim of domestic abuse. He stated:

> "[The Defendant] in fact did cause physical harm. He in fact did place the Plaintiff in fear of imminent serious physical harm. He did in a way which can only be characterized as sneaky * * *. That is exactly what he did. He knew exactly what he was doing. He wanted her out there."

Accordingly, the hearing justice concluded that plaintiff had demonstrated that a restraining order would be proper; he stated, "I find by a fair preponderance of the evidence [that defendant] has in fact committed domestic violence upon the Plaintiff." We perceive no clear error in that conclusion. *See Notarantonio,* 941 A.2d at 144; *see also North Providence School Committee v. North Providence Federation of Teachers, Local 920, American Federation of Teachers,* 945 A.2d 339, 345 n. 10 (R.I.2008) ("Although it is possible that one or more of the members of this Court might not have reached the same

result or engaged in the same process of reasoning as did the [hearing justice] in this case, the operative standard of review narrows [our] role * * *.").

Having reviewed the independent evidence upon which the hearing justice relied, we conclude that the defendant's argument concerning the sufficiency of the evidence is unconvincing.

### Conclusion

For the reasons set forth in this opinion, the defendant's appeal is denied and dismissed. The papers in this case may be remanded to the Family Court.