**Supreme Court**

No. 2012-177-Appeal.
(PC 07-5549)

David S. Vogel                    :

v.                    :

Juan G. Catala.                    :

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

**Supreme Court**

No. 2012-177-Appeal.
(PC 07-5549)
Dissent begins on page 6

David S. Vogel           :

v.                       :

Juan G. Catala.          :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Indeglia, for the Court.**  It is said that what happens in Vegas stays in Vegas—except in this case, where the parties dispute what happened there.  The defendant, Juan G. Catala (Catala or defendant), appeals from a Superior Court money-damage judgment in favor of the plaintiff, David S. Vogel (Vogel or plaintiff).  On appeal, Catala contends that the trial justice erred in (1) finding Vogel to be a credible witness; and (2) failing to find that the transaction between Vogel and Catala was void pursuant to G.L. 1956 § 11-19-17 as a loan for betting.  This case came before us for oral argument on February 6, 2013, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  After reviewing the record and considering the written and oral submissions of the parties, we are satisfied that this appeal may be decided without further briefing or argument.  For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

- 1 -

# I

## Facts and Travel

Initially, we pause to note that Catala, as the appealing party, has failed to order a transcript of the bench trial below, which is ultimately fatal to his appeal.[1] We briefly turn to the facts of this case, as gleaned from the record, including the written decision of the trial justice.

On April 9, 2007, Catala, while visiting Las Vegas, Nevada, called his friend, Vogel, who was in Rhode Island. Catala informed Vogel that he had lost money gambling and consequently needed additional money so he could attempt to recover his losses. Vogel then wired $8,500 to Catala, c/o The Bellagio Hotel in Las Vegas. According to Vogel, Catala promised to repay this debt within two weeks of receipt.

After Catala failed to repay him, on October 18, 2007, Vogel filed a complaint against Catala in Providence County Superior Court alleging both breach of contract and breach of an implied-in-fact contract. That same day, Vogel amended his complaint to include a claim for failure to repay based on book account. In his answer, Catala indicated that he was without sufficient information to admit or deny the book account claim—thus, disputing that he had received the $8,500.[2] He also denied the two breach-of-contract claims.

---

[1] At oral argument, this Court asked Catala's counsel whether he had ordered the transcript on appeal, to which he answered in the affirmative. However, our review of the lower court record reveals that he did not order the transcript—in fact, on the notice of appeal, he affirmatively indicated that the transcript would not be ordered.

On January 10, 2013, Vogel moved to dismiss this appeal on the grounds that Catala had failed to order a transcript of the proceedings below, pursuant to Article I, Rule 10 of the Supreme Court Rules of Appellate Procedure. In light of this opinion, we need not address that motion.

[2] Thereafter, in an affidavit filed on August 31, 2009, he acknowledged receipt of the $8,500.

On April 23, 2009, Vogel moved for summary judgment, attaching an affidavit containing the same assertions he had previously made in his complaint. In this affidavit, Vogel stated, in pertinent part: "Defendant called me to request that I loan money to him[.] Defendant said that he had lost a substantial sum of money during his trip to Las Vegas, and needed to borrow money so that he might win back at least part of what he had lost." On February 8, 2010, Catala then amended his answer to include an affirmative defense that the loan was void pursuant to § 11-19-17.[3]

The hearing justice subsequently denied Vogel's motion for summary judgment on February 23, 2010. Approximately one month later, Catala then moved for summary judgment, relying on the affirmative defense that he had raised in his amended answer that the loan at issue was void under § 11-19-17. The hearing justice denied this motion on May 18, 2010.

On November 4, 2010, the case proceeded to trial before another justice of the Superior Court, sitting without a jury. The trial justice issued a written decision on May 19, 2011, concluding that the loan was not void because it did not contravene § 11-19-17. In so concluding, he found that Vogel's testimony was more credible than that offered by Catala. In making this determination, the trial justice found "no credible evidence to support a finding that there were any promises given or made for the repayment of money knowingly lent for gambling or betting in violation of § 11-19-17." He further found that "the monetary transaction between

---

[3] In pertinent part, G.L. 1956 § 11-19-17 states that "[a]ll * * * promises, given or made * * * for the repayment of money knowingly lent for * * * betting, shall be utterly void." Although this Court has not yet passed on the prohibitions contained within that statute, we reviewed an earlier version in McGrath v. Kennedy, 15 R.I. 209, 2 A. 438, (1886). There, reviewing R.I. Pub. St. ch. 246, § 16, we explained that "[a]ll bonds, notes, judgments, mortgages, deeds, or other securities, as well as promises, given or made for money, * * * won at any game, or by betting at any race or fight, * * * shall be utterly void." Id. at 211, 2A. at 439 (emphasis added). Furthermore, it is interesting to note that the first reported opinion issued by this Court declared a contract void where the parties had placed bets on the outcome of an election. Stoddard v. Martin, 1 R.I. 1, 6-7 (1828).

the parties constituted a loan not tied to the gambling fortunes of Catala, and for which Vogel expected repayment * * *." Thus, he concluded that the loan did not violate § 11-19-17 because it was not extended for gambling purposes; rather, it was extended as an ordinary loan with the understanding that it would be repaid.[4] "To conclude otherwise," the trial justice stated, "would permit Catala to avoid repaying this loan, thus resulting in unjust enrichment." Accordingly, Catala was ordered to pay damages to Vogel in the amount of $8,500, together with statutory interest and costs. A judgment to that effect entered on April 30, 2012.

Catala then appealed to this Court.[5] He advances two theories in support of his appeal. First, he contends that the trial justice was incorrect in finding that Vogel was a credible witness. Second, he argues that the trial justice erred in failing to find that the transaction was void pursuant to § 11-19-17, because, according to Catala, Vogel had advanced the money to him with the knowledge that it would be used for gambling. In countering Catala's contentions on appeal, Vogel maintains that the trial justice was correct in concluding that he had loaned the money to Catala with the understanding that it would be repaid, and not with any knowledge that the loaned money would be used for gambling purposes

## II

### Analysis

"This Court gives great weight to the factual findings of a trial justice sitting without a jury in a civil matter, and we will not disturb such findings unless they are 'clearly erroneous or

---

[4] The trial justice made this finding despite the allegation in Vogel's complaint stating that he had wired Catala $8,500 after Catala told him that he "had lost a substantial sum of money during his trip [to Las Vegas], and now needed to borrow money so that he might win back at least part of what he had lost."

[5] Although Catala's appeal of the trial justice's decision was premature, the later entry of final judgment cured the defect in his premature appeal. See Merrimack Mutual Fire Insurance Co. v. Dufault, 958 A.2d 620, 623 n.4 (R.I. 2008).

- 4 -

unless the trial justice misconceived or overlooked material evidence or unless the decision fails to do substantial justice between the parties.'" Cahill v. Morrow, 11 A.3d 82, 86 (R.I. 2011) (quoting Costa v. Silva, 996 A.2d 607, 611 (R.I. 2010)). Moreover, "[t]he task of determining the credibility of witnesses is peculiarly the function of the trial justice when sitting without a jury." Walton v. Baird, 433 A.2d 963, 964 (R.I. 1981). "If our review of the record before us 'indicates that competent evidence supports the [trial] justice's findings, we shall not substitute our view of the evidence for his [or hers] even though a contrary conclusion could have been reached.'" Thibaudeau v. Thibaudeau, 947 A.2d 243, 246 (R.I. 2008) (quoting Imperial Casualty and Indemnity Co. v. Bellini, 888 A.2d 957, 961 (R.I. 2005)).

Here, however, because we have not been provided with a transcript of the trial below, we are unable to properly engage in a review of the trial justice's factual findings. Pursuant to Article I, Rules 10(b) and 11(a) of the Supreme Court Rules of Appellate Procedure, Catala, as the appellant, had a duty to ensure that the record on appeal was "complete and ready for transmission" to this Court. Small Business Loan Fund Corp. v. Gallant, 795 A.2d 531, 532 (R.I. 2002) (quoting Procopio v. PRM Concrete Corp., 711 A.2d 650, 651 (R.I. 1998) (mem.)). Catala's failure to order the transcript is not only "risky business" but also fatal to his appeal. See Bergquist v. Cesario, 844 A.2d 100, 105 (R.I. 2004). "[W]e ordinarily will not decide matters presented to us unless there has * * * been transmitted to us so much of the record of the tribunal below as may be necessary to enable us to pass on the question at issue * * *." Savoy Realty Corp. v. LPL, Inc., 121 R.I. 962, 962, 401 A.2d 61, 61 (1979) (mem.).

While the dissent reasons that Vogel's judicial admissions allow us to engage in a meaningful review of the decision below, we conclude otherwise. Without the transcript, we can only speculate as to the testimony adduced at trial. This Court declines to accept such an

invitation to gamble in that regard. We acknowledge that Vogel pleaded that he had wired Catala $8,500 after Catala had told him that he "had lost a substantial sum of money during his trip [to Las Vegas], and now needed to borrow money so that he might win back at least part of what he had lost." However, § 11-19-17 declares void only those transactions where money was "<u>knowingly</u> lent" for the purpose of, among other things, betting. (Emphasis added.) Thus, whether Vogel lent this money "knowingly" under § 11-19-17 was a question of fact for the trial justice in this case—a question that we cannot say the trial justice erred in deciding, without reviewing the transcript. Indeed, in his written decision, the trial justice explicitly found that "the monetary transaction between the parties constituted a loan not tied to the gambling fortunes of Catala, and for which Vogel expected repayment * * *."

Because we are unable to engage in any meaningful review of the trial justice's factual determination that Vogel did not "knowingly" lend the money at issue in contravention of § 11-19-17, this Court "has no choice but to uphold the lower court's findings." See <u>Bergquist</u>, 844 A.2d at 105 (citing <u>State v. Pineda</u>, 712 A.2d 858, 861 (R.I. 1998)).

### III

### Conclusion

For the reasons stated above, we affirm the judgment of the Superior Court, to which we remand the record in this case.

**Justice Robinson, dissenting.** I respectfully dissent. In my view, Mr. Vogel, by virtue of his own explicit judicial admissions, was statutorily barred from recovering the sum of money at issue in this case.

The following facts are uncontested. And, in my judgment, these facts should be dispositive of this case.

Paragraph 7 of Mr. Vogel's amended complaint reads in its entirety as follows:

> "On or about April 9, 2007, Defendant called Mr. Vogel in order to request that Mr. Vogel lend money to Defendant. At that time, Defendant was on vacation in Las Vegas, Nevada. Defendant said that he (Defendant) had lost a substantial sum of money during his trip, and now needed to borrow money so that he might win back at least part of what he had lost. Defendant indicated he would repay Mr. Vogel after he returned from Las Vegas. On or about that same day (April 9, 2007), Mr. Vogel wired $8,500 to Defendant; Defendant received the money at Bellagio Casino in Las Vegas." (Emphasis added.)

Mr. Catala raised G.L. 1956 § 11-19-17 as an affirmative defense in his answer to the amended complaint. That statute provides, in unequivocal language, that "[a]ll * * * promises * * * for the repayment of money knowingly lent for * * * gaming or betting * * * shall be utterly void."[6] Section 11-19-17 (emphasis added). Mr. Vogel also filed a motion for summary judgment, which included his sworn affidavit that acknowledged the purpose of the loan to Mr. Catala. Specifically, paragraph 4 of the affidavit states:

> "At the time [Mr. Catala] called me to request that I loan money to him, [Mr. Catala] said that he had lost a substantial sum of money during his trip to Las Vegas, and needed to borrow money so that he might win back at least part of what he had lost." (Emphasis added.)

Mr. Catala then filed his own motion for summary judgment, arguing that § 11-19-17 precluded Mr. Vogel from recovering the $8,500 at issue. In that motion, Mr. Catala directed the trial court's attention to both paragraph 7 of the amended complaint and paragraph 4 of Mr. Vogel's affidavit; nevertheless, the trial court denied Mr. Catala's motion for summary judgment. The

---

[6] The legislative ancestor of G.L. 1956 § 11-19-17 is the Statute of Queen Anne (9 Anne, ch.14, § 1), which was enacted in England in 1710. See 71 Am. Jur. 3d Proof of Facts 193 § 2 (2003).

case then proceeded to trial, at the conclusion of which the trial justice found that there was "no credible evidence to support a finding that there were any promises given or made for the repayment of money knowingly lent for gambling or betting in violation of § 11-19-17."

The doctrine of "judicial admissions" has long been recognized in our case law. This Court has clearly stated that "parties to an action are judicially bound by their pleadings therein and * * * the allegations are <u>conclusive as against the pleader</u>." <u>Ogden v. Rabinowitz</u>, 86 R.I. 294, 300, 134 A.2d 416, 419 (1957) (emphasis added). The opinion in the <u>Ogden</u> case further states:

> "This rule applies to all pleadings in the case, whether a declaration, complaint or petition, bill of particulars, plea or answer, or other pleading. A party cannot take a position contradictory of, or inconsistent with, his pleadings because the facts which are admitted by the pleadings are to be taken as true against the pleader for the purpose of the action, whether or not they are offered as evidence." <u>Id.</u>

See <u>also</u> <u>Amgen Inc. v. Connecticut Retirement Plans and Trust Funds</u>, 133 S. Ct. 1184, 1197 n.6 (2013) (citing with approval <u>American Title Insurance Co. v. Lacelaw Corp.</u>, 861 F.2d 224, 226 (9th Cir. 1988) ("Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them.")); <u>State v. Piedmont Funding Corp.</u>, 119 R.I. 695, 699, 382 A.2d 819, 822 (1978) ("It is the rule in this state that facts admitted in the pleadings are held as true against the pleader."); 61A Am. Jur. 2d <u>Pleading</u> § 352 (2010) ("An admission in the pleadings is conclusive on the pleader, even if the plaintiff later disputes the allegation."); Black's Law Dictionary 54 (9th ed. 2009) (noting that a judicial admission "relieves an opposing party from having to prove the admitted fact and bars the party who made the admission from disputing it").

The majority has declined to reach the merits of this case due to the fact that "we have not been provided with a complete transcript of the trial." The majority then states that it is "unable to properly engage in a review of the trial justice's factual findings."

As an initial matter, I agree with the majority that this Court "ordinarily will not decide matters presented to us unless there has * * * been transmitted to us so much of the record of the tribunal below as may be necessary to enable us to pass on the question at issue * * *." See Savoy Realty Corp. v. LPL, Inc., 121 R.I. 962, 962, 401 A.2d 61, 61 (1979) (mem.). To that end, it is the appellant's responsibility to order "a transcript of such parts of the proceedings not already on file as the appellant deems necessary for inclusion in the record." Article I, Rule 10(b)(1) of the Supreme Court Rules of Appellate Procedure (emphasis added); see also Anjoorian v. Kilberg, 836 A.2d 1092, 1096 (R.I. 2003).

What the majority overlooks, however, is that, given Mr. Vogel's judicial admission, we have everything that we need to perform a "meaningful review" of the trial court's decision to deny Mr. Catala's motion for summary judgment. See Anjoorian, 836 A.2d at 1096 ("It is the responsibility of an appellant to provide this Court with so much of the record as will enable us to perform a meaningful review, lest he or she run the risk that the appeal be dismissed." (emphasis added)). The record before us contains (inter alia) Mr. Vogel's amended complaint and Mr. Catala's motion for summary judgment.

Mr. Vogel's admission is dispositive of this case—a case that never should have gone to trial. In his amended complaint, Mr. Vogel explicitly indicated the purpose of the loan at issue; that pleading states that Mr. Vogel lent the disputed sum to Mr. Catala "so that he might win back at least part of what he had lost." (Emphasis added.)

The "fit" between the plaintiff's two explicit statements as to the purpose of the loan and what § 11-19-17 addresses could hardly be more perfect.  Section 11-19-17 reads:

> "<u>All</u> bonds, notes, judgments, mortgages, deeds or other securities, as well as <u>promises, given or made</u> for money, lands, houses, or other property, or article or piece of property, real, personal, or mixed, won at any game, or by betting at any race or fight, or <u>for the repayment of money knowingly lent for such gaming or betting, shall be utterly void</u>."  (Emphasis added.)

By its plain terms, the statute renders "utterly void" any loan where the lender knew that the borrower would use the loan to gamble.  And that is precisely what Mr. Vogel admitted in his amended complaint and in his sworn affidavit: in both of those documents filed with the court, he stated that he knew (1) that Mr. Catala was in Las Vegas, (2) that Mr. Catala "had lost a substantial sum of money during his trip," and (3) that Mr. Catala wanted the loan "<u>so that he might win back at least part of what he had lost</u>."[7]

---

[7]    It appears that the trial justice may have misunderstood the effect of § 11-19-17.  In his decision, he included the following finding of fact:

> "Previously, Vogel did advance money to facilitate Catala's entry into tournament poker games.  On those occasions, it was agreed that the advance for entry fees would not be repaid by Catala unless Catala won money in the poker tournament.  The Court does not find that the $8500 advance to Catala was in furtherance of the above poker arrangements; instead, the $8500 was a loan made by Vogel to Catala, and for which Catala was obligated to repay regardless of how he used the money."

This finding by the trial justice suggests that he believed that § 11-19-17 would apply only if Mr. Vogel's repayment was conditioned on Mr. Catala winning money at the tables.  The statute, however, is broader than that; it applies if money is "knowingly lent for * * * gaming or betting." In other words, since Mr. Vogel knew that Mr. Catala would be gambling with the $8,500, Mr. Catala was statutorily absolved of any legal obligation to pay Mr. Vogel back.  This may be a severe result, but it is the result expressly mandated by the General Assembly in § 11-19-17. The statute applies whether or not the lender has a stake in the outcome; so long as the lender offers money that he or she knows will be used to gamble, there is no legally enforceable promise for repayment.

Mr. Catala expressly cited the statute as an affirmative defense in his answer to the amended complaint, and he thereafter brought his statutory defense and Mr. Vogel's judicial admission (and affidavit) to the court's attention when he moved (unsuccessfully) for summary judgment. At the time Mr. Vogel filed his amended complaint, Mr. Vogel's knowledge of the purpose of the loan was "conclusively established." See State v. Rice, 986 A.2d 247, 249 (R.I. 2010) (internal quotation marks omitted). In other words, Mr. Vogel was "preclude[d] * * * from challenging [the judicially admitted fact] later during the lawsuit * * *." See DiLuglio v. Providence Auto Body, Inc., 755 A.2d 757, 767 (R.I. 2000). In spite of Mr. Vogel's written judicial admission, the trial court denied Mr. Catala's motion for summary judgment, proceeded to conduct a trial, and ultimately rendered a verdict that belied the statements made in Mr. Vogel's amended complaint and affidavit.

This case should have been decided by the granting of summary judgment in Mr. Catala's favor. What transpired after the denial of Mr. Catala's motion for summary judgment was entirely unnecessary. The trial justice never should have heard testimony or made credibility determinations. The transcript is superfluous to this appeal because, no matter what evidence was presented, the judicial admission in the amended complaint was conclusively established as against Mr. Vogel. See Rice, 986 A.2d at 249.

The majority states that, "[w]ithout the transcript, [they] can only speculate as to the testimony adduced at trial"; therefore, they "decline[] to accept such an invitation to gamble in that regard." Our law on judicial admissions, however, makes it clear that, in this case, there is no gamble: "A party cannot take a position contradictory of, or inconsistent with, his pleadings * * *." See Ogden, 86 R.I. at 300, 134 A.2d at 419. Whether Mr. Vogel lent the money "knowingly" for the purpose of betting is surely a question of fact, but Mr. Vogel answered that

- 11 -

factual inquiry "conclusively" when he filed his amended complaint.  See Rice, 986 A.2d at 249. The trial justice's findings, however, contradict a fact that had already been "conclusively established."  See id.  Mr. Vogel could very well have called one hundred witnesses to testify that he lent Mr. Catala the money without knowing that he would use it to gamble, but all of such testimony would have been to no avail in view of Mr. Vogel's unambiguous judicial admission. See 29A Am. Jur. 2d Evidence § 783 (2008) ("The party who made a judicial admission may not controvert the admission on trial or on appeal, and may not create a question of fact for purposes of a summary judgment motion by trying to contradict a previous judicial admission.").  While I have great respect for my colleagues in the majority, it is unclear to me why they have not addressed the conclusive nature of Mr. Vogel's judicial admission—a concept which we have characterized as "among the most solemn and probative evidentiary offerings known to the law." See Carter v. Munson, 452 A.2d 309, 310 (R.I. 1982).

In my judgment, Mr. Catala was entitled to summary judgment based upon the doctrine of judicial admissions—a venerable and fundamental principle of our jurisprudence.

For these reasons, I respectfully dissent.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**        David S. Vogel v. Juan G. Catala.

**CASE NO:**        No. 2012-177-Appeal.
                    (PC 07-5549)

**COURT:**        Supreme Court

**DATE OPINION FILED:**  April 12, 2013

**JUSTICES:**        Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**        Associate Justice Gilbert V. Indeglia

**SOURCE OF APPEAL:**    Providence County Superior Court

**JUDGE FROM LOWER COURT**:

                    Associate Justice Allen P. Rubine

**ATTORNEYS ON APPEAL:**

                    For Plaintiff:  Barbara A. Barrow, Esq.

                    For Defendant:  William F. Warren, Esq.