January 15, 2026

**Supreme Court**

No. 2024-269-Appeal.
(KD 24-229)

Alicia Andrew        :

v.            :

Richard Adorno.        :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Alicia Andrew         :

v.             :

Richard Adorno.       :

Present:  Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

**O P I N I O N**

**Justice Long, for the Court.**  The plaintiff, Alicia Andrew (Ms. Andrew or plaintiff), appeals from a final judgment of the Superior Court reversing a District Court judgment that granted her an order of protection against the defendant, Richard Adorno (Mr. Adorno or defendant).  This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that we may decide this case without further briefing or argument.  For the reasons set forth in this opinion, we vacate the judgment of the Superior Court and remand for a new hearing.

**Facts and Procedural History**

On February 16, 2024, Ms. Andrew filed a domestic-abuse complaint in District Court alleging that Mr. Adorno had "caused [her] to engage involuntarily in sexual relations by force, threat of force, or duress." The District Court entered an *ex parte* temporary order of protection the same day, which prohibited Mr. Adorno from contacting Ms. Andrew and ordered him to surrender any firearms he possessed. After a hearing, the District Court entered judgment for Ms. Andrew and granted her a final order of protection on March 6, 2024. Pursuant to the final order, the court prohibited Mr. Adorno from contacting or interacting with Ms. Andrew for three years and required him to "surrender physical possession of all firearms in [his] possession, care, custody, or control * * * while this protective order is in effect" pursuant to G.L. 1956 § 11-47-5 (possession of firearms by certain persons prohibited). Mr. Adorno timely appealed the final order of protection to the Superior Court.

The Superior Court held a *de novo* bench trial on April 26, 2024, at which Mr. Adorno represented himself. At the outset of the trial, the trial justice stated that he would apply a standard of clear and convincing evidence in evaluating whether Ms.

Andrew met her burden of proof due to the implications on Mr. Adorno's rights under the Second Amendment to the United States Constitution.

Before the end of proceedings, Ms. Andrew's counsel asked the trial justice to clarify why he intended to apply a clear and convincing evidence standard, "[because in his] experience with restraining orders it's always been a preponderance of the evidence [standard]." The trial justice responded that "domestic abuse, like the extreme risk [statute], has the exact penalty, giving up guns, not being able to own a gun and being * * * able to transfer them to a dealer. Those are different penalties. So that's why I use clear and convincing for these restraining orders." Ms. Andrew's counsel responded that he had only ever seen a preponderance standard, even in cases involving firearms, to which the trial justice replied that the extreme risk statute was relatively new. The trial justice then reserved his decision and adjourned the proceedings.

On June 11, 2024, the trial justice announced his decision from the bench. He began by observing that this case could be evaluated under either G.L. 1956 chapter 8.1 of title 8 (Domestic Assault) or G.L. 1956 chapter 37.2 of title 11 (Sexual Assault Protective Orders), because the protective order was authorized under both provisions, but he said that he would be evaluating it under the latter since the parties do not meet the criteria for a substantive dating relationship as required under the former. He reiterated that because chapter 37.2 of title 11 has the same effect on

firearm rights (i.e., temporary restrictions on firearm possession) as the extreme risk cases, it is appropriate to use the clear and convincing evidence standard from the extreme-risk statute to evaluate whether to grant the protective order.

The trial justice called the case "a classic he said, she said" and observed that there were no witnesses at the time of the alleged sexual assault. He determined that the case therefore would have to come down to witness credibility and corroborating evidence. He announced that he found Mr. Adorno's evidence more credible than Ms. Andrew's. He concluded that Ms. Andrew did not prove by clear and convincing evidence that Mr. Adorno sexually assaulted her. The trial justice entered judgment for Mr. Adorno, dismissing the complaint and dissolving the protective order. Ms. Andrew filed a timely appeal to this Court.

**Standard of Review**

This Court applies a *de novo* standard when reviewing an appeal based on an alleged error of law. *Warwick Sewer Authority v. Carlone*, 45 A.3d 493, 498 (R.I. 2012). *De novo* review is appropriate in such a case because "this Court is in the best position to decide the merits of a given question of law." *Lett v. Providence Journal Company*, 798 A.2d 355, 363 (R.I. 2002) (quoting *Votolato v. Merandi*, 747 A.2d 455, 460 (R.I. 2000)). We also review questions of statutory interpretation *de novo*. *Beagan v. Rhode Island Department of Labor & Training*, 253 A.3d 858, 861 (R.I. 2021). "When this Court engages in statutory construction, our ultimate goal

is to give effect to the purpose of the act as intended by the Legislature." *Id.* at 861-62 (quoting *Powers v. Warwick Public Schools*, 204 A.3d 1078, 1085 (R.I. 2019)).

**Analysis**

We consider here whether a preponderance of the evidence, the typical standard in civil cases, is appropriate in protective-order proceedings, or whether a higher standard of proof is required when a defendant's rights under the Second Amendment to the United States Constitution would be temporarily restricted. Although the question of how temporary restrictions on a defendant's Second Amendment rights should factor into evaluations of civil protective orders has not been directly addressed by this Court in the past, the answer is clear. We conclude that the trial justice erred by elevating the standard of proof required in this case. We vacate the Superior Court judgment and remand for a new hearing applying a preponderance of the evidence standard.

Mr. Adorno, who continues to represent himself, argued on appeal that this Court should affirm the dismissal of the District Court judgment against him because: (1) he and Ms. Andrew have never been in a domestic or romantic relationship; (2) the incident occurred over a year ago; and (3) they have not had any interaction since then. He also submitted that "there is no evidence of harassment or danger that warrants the imposition of a restraining order." However, the question of whether this particular protective order should be reinstated is not before this

Court.  The sole question that we have been tasked with answering is what the proper burden of proof is for civil protective orders.  Thus, we confine our review to that question of law.

Although chapter 37.2 of title 11, the statute the trial justice applied, does not make direct reference to the deprivation of firearms, it is understood to be implicated in § 11-47-5(b), which restricts firearm rights if a person "is subject to [a civil protective] order issued pursuant to [G.L. 1956] chapter 15 of title 15, chapter 8.1 of title 8, or *an equivalent order in this state* or elsewhere, which order was issued after the person restrained has received notice of the proceedings and had an opportunity to be heard." (Emphasis added.)  Unlike chapter 15 of title 15 and chapter 8.1 of title 8, chapter 37.2 of title 11 does not explicitly list surrendering firearms as a form of relief that can be granted. *Contrast* § 11-37.2-2, *with* G.L. 1956 § 15-15-3(a)(4), *and* G.L. 1956 § 8-8.1-3(a)(4).  However, chapter 37.2 includes language that a complainant may seek any relief "which will protect him or her from the future abuse, including, *but not limited to*, the following * * *." Section 11-37.2-2(a) (emphasis added).  We conclude that § 11-37.2-2(a) implicates § 11-47-5(b)'s firearm deprivation provision.

This Court has once considered the question of the proper standard of proof in protective order proceedings in *Thibaudeau v. Thibaudeau*, 947 A.2d 243 (R.I. 2008), and tacitly approved of a preponderance of the evidence standard:  "[T]he

- 6 -

hearing justice concluded that plaintiff had demonstrated that a restraining order would be proper; he stated, 'I find by a fair preponderance of the evidence that defendant has in fact committed domestic violence upon the Plaintiff.' We perceive no clear error in that conclusion." *Thibaudeau*, 947 A.2d at 247 (brackets omitted). However, *Thibaudeau* preceded the passage of the Protect Rhode Island Families Act, P.L. 2017, chs. 374, 385 (PRIFA), which gave the District and Family Courts the power to compel defendants to give up their guns for the duration of protective orders against them. The PRIFA, however, did nothing to alter the standard to be applied.

We have found no evidence that the General Assembly intended for courts to apply an elevated standard in civil protective order proceedings following the passage of the PRIFA. When engaging in statutory interpretation, this Court takes notice of where language is included or omitted; we have observed that if the legislature includes language in one part of a statute but not in another, we must assume that it acted deliberately. *See In re Proposed Town of New Shoreham Project*, 25 A.3d 482, 525 (R.I. 2011) ("Where the Legislature includes particular language in one section of a statute but omits it in another section of the same act, it is generally presumed that the Legislature acts intentionally and purposely in the disparate inclusion or exclusion." (brackets omitted) (quoting *Kucana v. Holder*, 558 U.S. 233, 249 (2010))). Indeed, "[t]his Court * * * is not 'entitled to write into the

- 7 -

statute certain provisions of policy which the legislature might have provided but has seen fit to omit. If a change in that respect is desirable, it is for the legislature and not for the [C]ourt.'" *Simeone v. Charron*, 762 A.2d 442, 448 (R.I. 2000) (deletions omitted) (quoting *Elder v. Elder*, 84 R.I. 13, 22, 120 A.2d 815, 820 (1956)). Here, there is no evidence that the legislature wanted courts to apply a higher standard of proof for civil protective orders. There are other places in the PRIFA where the General Assembly did specify a higher burden of proof, including what a person whose firearm rights have been taken away must demonstrate in order to have those rights restored. *See* § 15-15-3(j) ("At the hearing, the person restrained under this section shall have the burden of showing, by clear and convincing evidence, that, if his or her firearm rights were restored, he or she would not pose a danger to the person suffering from domestic abuse or to any other person."); § 8-8.1-3(j) (same). We are satisfied that the statutory language, particularly when combined with this Court's statement in *Thibaudeau*, compels the conclusion that the legislature did not intend to require a higher standard of proof.

Either through explicit statutory language or judicial interpretation, other states uniformly apply a preponderance standard when evaluating whether to grant a protective order in domestic violence and abuse cases.[1] *See Cruz-Foster v. Foster*,

---

[1] Before Maryland amended its statute in 2014 to lower the standard to a preponderance, it was the only state that explicitly required a showing of domestic violence by clear and convincing evidence in order to obtain a protective order. *See*

597 A.2d 927, 930 & n.3 (D.C. 1991); *Steckler v. Steckler*, 492 N.W.2d 76, 80 (N.D. 1992); *Frizado v. Frizado*, 651 N.E.2d 1206, 1210 (Mass. 1995), *overruled on other grounds by Zullo v. Goguen*, 672 N.E.2d 502, 503-04 (Mass. 1996); *Felton v. Felton*, 679 N.E.2d 672, 678 (Ohio 1997). While it is true that courts apply a clear and convincing evidence standard in civil cases to protect important rights such as those involving "a significant deprivation of liberty" or "stigma," *Santosky v. Kramer*, 455 U.S. 745, 756 (1982) (quoting *Addington v. Texas*, 441 U.S. 418, 425, 426 (1979)), such an application is not automatic. *See People v. Jason K.*, 116 Cal. Rptr. 3d 443, 452 (Cal. Ct. App. 2010) ("[T]he fact that a proceeding may result in a loss of an important constitutional right does not necessarily mean that the preponderance of the evidence standard violates due process."). A key consideration in these cases, and in protective order cases across the country implicating a deprivation of firearm rights, is the duration of the restrictions. In Rhode Island, as elsewhere, the deprivation is temporary, lasting only as long as the protective order stays in place, which here is a maximum of three years. *See* § 11-37.2-2(d). Moreover, individuals whose rights are restricted by the issuance of a protective order have the opportunity to be heard by a court on the issue of whether their rights should be reinstated while

---

*Press Release: Lt. Governor Brown Highlights New Domestic Violence Laws Taking Effect October 1st*, State of Maryland (Oct. 1, 2014), https://regulations.maryland.gov/press-releases/new-domestic-violence-laws-october-1/.

the protective order is still active. *See* § 8-8.1-3(c) ("[A]ny person who has surrendered their firearms [pursuant to § 11-47-5] shall be afforded a hearing within fifteen (15) days of surrendering their firearms."). Thus, these temporary restrictions can be challenged and reversed, affording defendants an opportunity to regain their firearm rights before the protective order expires.

The two state appellate courts that have directly addressed the Second Amendment implications on the proper standard of proof in protective order proceedings have also concluded that a preponderance standard is appropriate. *See Turner v. Turner*, 317 P.3d 716, 720, 722 (Idaho 2023); *Roper v. Jolliffe*, 493 S.W.3d 624, 638 (Tex. Ct. App. 2015). In both cases, the courts found the temporary nature of the restriction and the absence of statutory language to the contrary compelling, while emphasizing the potentially grave consequences to the safety of the individual seeking the protective order if one is not granted. *Turner*, 317 P.3d at 720, 722; *Roper*, 493 S.W.3d at 638 n.16.

In the absence of an indication by the General Assembly that the temporary loss of the right to possess firearms amounts to a significant deprivation of liberty requiring a higher standard, we are confident that a preponderance is the proper standard to apply when considering whether to grant a domestic assault or sexual assault protective order to an individual seeking a reprieve from danger.

**Conclusion**

Because we hold that the Superior Court erred in applying a clear and convincing standard to determine whether Ms. Andrew had been assaulted by Mr. Adorno, she is entitled to a new hearing in the Superior Court using the preponderance of the evidence standard. We therefore vacate the Superior Court's reversal of the District Court judgment and order of protection and remand the case to the Superior Court for further proceedings.

**STATE OF RHODE ISLAND**

**SUPREME COURT – CLERK'S OFFICE**

Licht Judicial Complex

250 Benefit Street

Providence, RI  02903



# OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Alicia Andrew v. Richard Adorno. |
| **Case Number** | No. 2024-269-Appeal.<br>(KD 24-229) |
| **Date Opinion Filed** | January 15, 2026 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Melissa A. Long |
| **Source of Appeal** | Kent County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Kevin F. McHugh |
| **Attorney(s) on Appeal** | For the Plaintiff:<br><br>Alan E. Schoenfeld, Esq., *Pro Hac Vice*<br>Frank A. Ribezzo, Esq. |
| | For the Defendant:<br><br>Richard Adorno, *pro se* |